The opinion of the court was delivered by
Nicholls, C. J.
Defendant was indicted in the parish of Yernon for murder. He applied for and obtained a change of venue, and the cause was transferred for trial to the parish of Sabine. It was there tried. The jury returned a verdict of “ Guilty without capital punishment.” He was sentenced to hard labor in the penitentiary for life, and he appealed.
On Tuesday, the 16th of February, 1897, the second day of the Sabine parish term of court, the case of the State of Louisiana vs. Daniel was fixed for trial for the 23d of the month. On that day defendant, through his counsel, suggesting to the court that the transcript of papers sent up from the parish of Vernon to the parish of Sabine, on a change of venue, was not a complete transcript of proceedings and did not contain ail of the papers filed in the said ease in the Twelfth Judicial District Court for the parish of Yernon (sugg sting certain designated papers as not included therein, which he declared to be material, among the same three certain bills of exception which he alleged he had reserved to rulings of the District Court, and which had been signed by the judge), moved and prayed,' that the clerk of the District Court of Vernon parish be ordered to complete the record by sending up the missing papers and that he be not placed on trial until said record was so completed.
In the body of the motion, after setting forth the absence from the record of certain papers, he alleged that “the proceedings of this case in the parish of Yernon as sent to this court (Sabine) are not properly attested, and that the irregularities complained of would work a hardship to defendant in this case, as there were various matters and pleas that should be filed' in his case in this court (Sabine) in order that justice might be done him, and which could not be filed until all of the papers and proceedings in said case were before this court.”
The court upon this motion ordered the district clerk of Vernon *956 to complete the record in the particulars complained of, directing that he send up “ certified copies of all bills of exception, if any, that are not already in here.” The trial was postponed and the case reassigned for the 26th.
On that day the clerk of Vernon presented what was claimed to be the complete record of the case. The clerk certified that “he had carefully searched for the alleged bills of exceptions asked for and had been unable to find them; that he had no knowledge that the same ever existed.”
Defendant thereupon suggesting that the three bills of exceptions already referred to were still missing, also certain newly mentioned papers, and that the transcript was still incomplete, and suggesting that the certificate of the clerk of the court of Vernon to the correctness of the copy of the minutes of the court of Vernon and his certificate to that of the entire record were not sufficient, or such as the court could recognize, in that they were not sealed in such a manner or with such a seal as the law requires the clerks of courts to use, prayed that the answer or return of the clerk be not accepted, that the rule remain in force, and that the trial be postponed until the order of court for the completion of the record was fully complied with.
This prayer the court refused to grant, and defendant reserved a bill. The court in overruling this motion stated that the clerk produced all of the record called for by the defendant on his rule to complete the record that was not already in it and overlooked by him when he filed his rule, except the three bills of exceptions * * * that the court was unable to say whether they were ever signed or not, but their substance had been stated to it, in the rule to complete the transcript and shown by testimony before it on the rule, and the whole matter was in such shape in the record that the Supreme Court would be sufficiently advised to pass upon the questions arising under the bills; it further stated that nothing could be gained by rejecting the answer of the clerk and ordering him to find the bills when he said he knew nothing of them.
It is further said that “the objection urged that the record was not properly attested was aimed at the form of the seal used by the clerk of Vernon in not having on it a pelican feeding its young; that that was the want of correctness urged; that the record and a copy of the orders were sent from Vernon, properly certified under *957 the seal of the clerk of the District Oourt of Vernon, and no objection was made that the certificate was insufficient, or that it was not sealed, but only that the seal used was not such a one as the law requires. The seal was of the usual size and shape, and contained the words clerk of court and ex-officio recorder Vernon parish, La.; Also a small star. There was no other picture.”
It appears that counsel of the defendant had, in Vernon parish, insisted upon their right to have certain motions, which they had filed set for trial in the absence of their client then in jail in Rapides parish, but that this right was not conceded by the court, and the motions were postponed for trial until the accused should be present, and they were subsequently so tried. The bills of exception could have had no possible influence upon any proceedings to be had in the parish of Sabine. They could only be utilized for defendant in this court in the event of a judgment against him. We see enough of the •questions at issue to know that the action of the court, in respect to the matters complained of, could have worked no possible injury to the defendant. The court was unwilling to take the risk of trying the motions in the absence of the prisoner; tobe, possibly,afterward confronted by the claim that such a proceeding was totally illegal aDd unwarranted. He exercised proper discretion in so doing.
The court having determined that the trial should proceed, defendant moved for a continuance on the ground of the absence of witnesses. The continuance was refused, and defendant excepted.
In his bill he states that when the case was called up he answered he was not ready for trial, showing and stating that although his witnesses had been duly summoned and attachments had been issued for some of them on the 23d, they were still not present. That his grounds for continuance were stated in the motion for the same, which he annexed to the bill.
One of the grounds of complaint urged in the bill of exception was that the District Court, instead of requiring that the District Attorney should admit that all of the different witnesses named in his motion for a continuance would, if present, swear to the fact which defendant stated he expected to prove by them, had restricted the admission on the part of the District Attorney to the witnesses Hagan, Johnson, Duke and Foster.
The judge at the foot of the bill stated that “the three attachments mentioned in the motion were issued on the 23d, and had all *958 been returned on the 26th ‘ not found ’ — one was for a person who had never been found or served with a summons — one was for a person whom the sheriff returned, had permanently left the State, and the third for a person who had fled the State to avoid arrest under a warrant issued before he was summoned — that there was no reasonable probability of procuring the attendance of either of them . by a continuance. That besides the absence of those particular persons defendant grounded his application for continuance on the absence of two witnesses in the parish of Avoyelles, for whom summons had been sent for service by the sheriff of that parish; also of two witnesses for whom summons had been sent to both Avoyelles and Rapides, for a witness for whom summons had been sent for service to the sheriff of Natchitoches and of another in Vernon parish; that in all those cases the sheriffs of the different parishes had made recurn that the parties named “could not be found.” That two of the parties named as witnesses, whose testimony was declared needed, and whose absence was made one of the grounds of continuance (Kirkley and Bratt), had not only not been summoned but no summons had been applied for. That as to the others named the court could see no reasonable probability of getting their presence by a continuance, aud from all the information it could get, as well as from the returns of the various sheriffs, the witnesses were not residents of the different parishes named, and they had no known residence. That the defendants had had ample time since the change of venue was granted (more than two months) to And the witnesses if they could be found; that three of the witnesses (Hagan, Foster and Johnson) had been summoned, and the summons for another (Duke) had not been returned, and the District Attorney was required to admit that each of them would swear, if present, to all the facts as stated in the affidavit for continuance; that, besides, the accused was not wholly without witnesses, by whom he could prove the same facts that he expected to prove by the absent witnesses. He made a witness of himself and testified to all the facts attending the killing, as well as the previous threats of deceased, substantially as he claimed that the absent witnesses would swear. He also had the testimony by the District Attorney’s admission of Johnson and Hagan, alleged eye-witnesses to the killing, whose testimony is substanially the same as that of Frazier, Gallagher, Farris, Kirkley and Bratt, as shown by the affidavit for continuance. He *959 also had the testimony of Duke under the District Attorney’s admissions as to the previous threats, so that he had his own testimony and that of the witnesses Johnson, Hagan and Duke to prove the-same facts that he expected to prove by the other absent witnesses. That the accused had stated in his affidavit for continuance that he anticipated that the State would attempt to show that he had made threats against the deceased, and he expected to disprove that fact by the absent witnesses Sanders, Sercy, Carson and MulligaD, but that the State did not offer any such evidence as had been anticipated would be given on that point, and, therefore, the rebuttal testimony was not needed. That the allegation in the motion made for continuance that the absent witnesses were deterred from attendance-by fear or intimidation, the court was satisfied was not the case; that there was no reason to suppose that any witness would be afraid to-attend and testify at Many, in Sabine parish, a point then reached by rail.”
On the trial of the case one J. C. Stanley, being on the stand as a witness for the State, testified that he was standing a few feet from the parties at the time of the killing, and heard the defendant say to the deceased, “You and your partners had 39% ties each. Craft (the deceased) then made some reply which witness did not hear, and to which reply of Craft’s the defendant responded by calling-the deceased (Craft) a damned liar, to which Craft, the deceased, said, ‘ Same back to you, partner,’ when defendant drew his pistol and shot Craft dead.” Defendant objected to this testimony on the ground th’at the witness did not hear all that passed between the-parties, and detached parts of a conversation’were not admissible to go to the jury. The court overruled the objection. At the foot of the bill of exception reserved to the ruling, the District Judge states that “ the objection was based on the fact that the witness did not hear Craft’s reply to the remark of the defendant about the number of ties. They were disputing about the number of ties when-the damned lie was passed by defendant and returned by deceased, and the fatal shot was fired. It was not pretended that there was anything in the reply of Craft (which the witness did not hear) that in any manner tended to justify or excuse the killing. The witness, when on the stand, was asked: “What was Craft’s reply!” and said: “He just kept on disputing.” The court held “ that because a witness to a homicide could not detail all that occurred at a homi *960 •cide (was not a reason) he could not tell all that he had seen and heard."
Defendant moved for a new trial, contending that the verdict was contrary to the law and the evidence; that the supposed crime for which he was tried and convicted was supposedly committed in the parish of Vernon, in the Twelfth Judicial District; that said case known as the State of Louisiana vs. No. 303, was on a change of venue transferred from the parish of Vernon to the parish of Sabine in the Ninth Judicial District. That on the trial of said case in the parish of Sabine, the prosecution failed to offer in evidence the proceedings had in the case in "the parish of Vernon, nor had the same ever been endorsed or filed by the clerk of the court of thp parish of Sabine. That by said failure so to do and the absence of «aid material testimony (not even showing the order by authority of which the change of venue had been granted and the trial was being had in the parish of Sabine), there was a trial and conviction before a court without jurisdiction and without a finding of a grand jury, which was both contrary to law and to justice and defendant had been thereby greatly injured. That the alleged indictment in the case was vague, uncertain and totally defective; that it did not show in what Judicial District the.said alleged crime was committed; did not allege the residence of the accused, and but vaguely, if at all, set out the parish in'which the crime was supposed to have been committed.
The court overruled the motion and defendant reserved a bill. The judge assigned the following as his reasons for not granting a new trial: “First — The verdict was fully supported by the law and the evidence. Second — It was urged that the District Attorney failed to offer in evidence the proceedings in Vernon parish. This was unnecessary. It would have been confusing and prejudicial to have offered and had read in evidence the proceedings had in Vernon parish, including motions to quash the venire and the indictment, and for change of venue and the evidence taken thereon. The indictment was read by the clerk of court to the jury and the case was presented to them in the usual way, the clerk sayiug to the jury that the prisoner had on his arraignment pleaded not guilty and put himself upon his country for trial, etc. The court can see no useful purpose to be subserved by offering in evidence all of the proceedings had in Vernon and having them read to the jury. The case of *961 State vs. Brown, 33 An. 1151, is not in point. The court in that case only decided that the record from the original parish must be under seal. It is true the court said: ‘It however became necessary to offer the record in evidence and objection was made that it had no seal and this objection was properly overruled,’ etc.
“It was perhaps on some motion that it became necessary to offer the record or some exceptional circumstance. There is no broad declaration that it was necessary to offer the receipt in evidence. The language of the court would imply it was exceptional. ‘ It however became necessary,’ etc. I think the law is well stated in State vs. Alvarez, 7 An. 284.”
It was urged, thirdly, that “that record was not endorsed and filed by the clerk of Sabine parish. After the verdict was received, and before the motion for new trial was filed, the omission of the clerk to mark the record ‘ filed ’ was noticed by the court, and the District Attorney filed a motion to have the same filed nunc pro tunc February 27 for February 6, 1897, and it was so ordered — the motion for new trial being filed at the same time.” [State vs. Alvarez, 7 An. 284; State vs. Hall, 44 An. 976].
It was urged, fourth, “that the record did not show order of court granting change of venue.’' The record does contain the order granting change of venue, also the minutes, showing the finding of the grand jury — this objection is, therefore, not supported by the facts.
It was urged, fifth, that “ the indictment is vague and indefinite and does not mention the number of the district or the residence of the defendant. This was unnecessary, and the indictment is sufficient. It is therefore overruled.”
The defendant moved in arrest of judgment, assigning for the same, the same grounds which he had set up in the motion for a new trial. The court overruled the motion, and defendant took a bill of exceptions. We find in the record a bill of exception, complaining of the action of the court in ordering the clerk of the Sabine court to file “ nunc pro tunc” the record sent up from Venon.
The bill recites that the defendant objected on the following grounds:
1. Said filing came too late, for the case had been tried and a verdict rendered.
2. That said record was not properly attested and had not a legal *962 seal to same, and that some of the material papers of said record were not signed and attested by the clerk of the court of Vernon; nor was there any seal whatever on them — especially is this true of the evidence of one Craft on motion to quash the venire and the minutes of the court of the parish of Vernon,
The court overruled the objection, stating: “The court and District Attorney only discovered that the clerk of Sabine parish had neglected to mark the record sent from Vernon parish 'filed ’ after the verdict was received. The District Attorney then moved, and the court ordered the clerk of Sabine parish to file the papers ‘ nunc pro tune,’ February 27, 1897, for February 5, 1897. The court believes this was proper.” [State vs. Alvarez, 7 An. 284; State vs. Hall. 44 An. 976.]
“ The record was properly attested by the clerk thereof, under his seal. He did not put a separate certificate on each separate paper, but a certificate to the whole record, just as a clerk certifies a transcript from the District to the Supreme Court. The court believed that was sufficient. Besides, when counsel moved to complete the record before trial they made no suggestion that each paper should have a separate certificate and seal, but only objected to the form of the seal when asked in what respect they claimed that the record from Vernon was not properly attested.”
Independently of the complaints made and bills taken in the parish of Sabine, counsel of defendant call our attention in their brief to a bill reserved by them to the action of the District Court of Vernon in transferring the case to the parish of Sabine, instead of to the parish of Rapides. The District Court states in. the bill that “ defendant, in his application for a change of venue, did not ask directly for a change to Rapides parish — the motion asked directly for a change, irrespective of the. place whereto the case would be assigned; that Rapides was inconvenient both as to distance and delay, also as to expense; that Sabine parish was nearer, and offered earlier opportunity for trial of the accused.”
í¿ Defendant, in his motion for a change of venue, after reciting that he stood indicted in the parish of Vernon for the charge of murder (which case was then pending in the court for that parish), alleged reasons why he thought the cause should not be tried in Vernon, but should be removed to another parish. His prayer was that he be granted a change of venue to some other neighboring parish, as the *963 law állows in sueb cases; that for the reasons assigned in bis petition, preference be given in favor of the parish of Rapides. The reasons assigned were simply that a transfer to that parish would be more convenient and less expensive than to any other parish. It was elicited on the trial of the motion as a fact that the sheriff of Sabine was a distant relative of Graft, the party killed by the accused, but it was stated that he was absolutely fair on ail trials, and discharged his duty strictly. See. 1023 of the Revised Statutes declares that “if (on an application for a change of venue) the judge be of opinion that the accused can not have a fair and impartial trial in the parish where the indictment is pending, he shall award a change of venue to the adjoining parish of the same judicial district, or of an adjoining district, and, if possible, to that in which a District Court shall be next held.”
No fact has been shown to us tending in the least to show that the judge’s action in the premises was other than legal and judicious.
The averments made in defendant’s motion for a continuance indicate clearly that the people of Sabine stand impartial toward him. It was not pretended that any act had been or was likely to be done by the sheriff of Sabine to the prejudice of the defendant, nor is there, at this time, any suggestion of wrong-doing by him. Had there been any reason to suspect such action at the hands of the sheriff an easy remedy was at band. We think the case was properly sent to Sabine parish.
The motion in arrest was correctly overruled. There is no law requiring that the residence of a party charged with crime should be stated in the indictment. The crime was charged to have been committed in the parish of Vernon; there was no necessity for the indictment fo mention the title of the court within whose jurisdiction it occurred.
As stated in State vs. Kennedy, 8 Rob. 599, “when an indictment sets forth the parish or venue where the offence has been committed the law fixes the only court which has jurisdiction of it. The same court before which the indictment was found must try it (unless there should be granted a change of venue), hence there is no necessity for a caption to the indictment in this State. The court, which has itself taken the indictment, can not desire to be informed by what authority it was acting, nor can it desire a formal statement of proceedings, all of which have passed under its own eye and form a *964 part of its own record.” We see no ground upon which the jurisdiction of the Sabine court could be called in question other than upon a claim that its jurisdiction rested upon the fact that the proceedings from Vernon should have been legally placed before that court, and that that was not done. To that matter we shall hereafter refer. We think the court which tried the case had jurisdiction over it.
Defendant’s contention that a new trial should have been accorded for the reason that the State did not offer in evidence the proceedings had in the cause in Vernon prior to its transfer to Sabine is not well founded. We are not advised as to the particular purpose for which it is claimed those proceedings were necessary to be placed before the jury as evidence. We ascertain from the record that defendant was formally arraigned and pleaded in Sabine parish; that the indictment was read to the jury, and matters proceeded there as they would have done in Vernon had there been no change of venue. The recital of the arraignment of accused in Vernon parish, as it appears in the record, is in questionable form. We are not positive that the entry to that effect in the transcript was taken from the minutes, but the original application for a change of venue made “ at chambers ” is in the record, and the fact of defendant’s arraignment in Vernon is expressly stated by defendant in one of his bills of exception. We think the arraignment was sufficiently shown (Revised Statutes, Sec. 1031).
The jury in Sabine was simply charged with ascertaining and declaring whether the accused was guilty or not guilty under the charge made. If from any reason the cause itself was not legally submitted to them, correction and remedy would come from a quarter other than the jury.
The declaration made in the application for a new trial that the ■case was before a court without jurisdiction and without the finding of a grand jury was evidently based upon the claim that the proceedings from Vernon had not (for several reasons) been legally placed before the Sabine court — (1) because they were not “filed” until after verdict; (2) because the proceedings, if they had been filed, were not authenticated in such a way as to justify their being considered. It is conceded that the record was not marked “ filed ” by the clerk until the 27th of February, 1897, when it was so marked “ nune pro tune ” as of the 5th of February by order of the court. *965 The verdict of the jury had at that time been returned. It is not and can not be claimed that, as a matter of fact, a part at least of the papers and proceedings were not in the Sabine court on the 15th of Februáry, 1897, for we find the case docketed of that day, and defendant’s counsel then moving to have the transcript, which had been forwarded “completed,” with specification as to certain missing papers which he called for. The indictment which had been found against defendant, and the motion for a change of venue with its endorsements, was not among such missing papers. It is clear-that a portion of the proceedings had been, in fact, deposited with the clerk of Sabine parish, and treated (unless the claim made that they had not been properly attested could be sustained) as properly before the court. It is also cleai' that an additional transcript had been forwarded by the clerk of Vernon to that of Sabine, and that it was in the hands of the latter on the 26th day of February, for counsel of defendant referred to the same in the motion he made of that date in which he complained that the record forwarded was- “ still incomplete,” and in which he again specified certain documents as missing. The documents and papers being actually in-court, the failure of the clerk to mark them “filed” was a mere omission, susceptible of correction, as it was “ nunc pro tunc ” by order of court. [State vs. Alvarez, 7 An. 284; State vs. Hall, 44 An. 976.]
The proposition of defendant that the mere order of the court to-transfer the cause to Vernon did not “ ipso facto ” vest jurisdiction in the Sabine court, and that the latter did not acquire jurisdiction until the record was filed with it in order that there should be some-, thing actually before the latter on which it could be called to act, might be granted without affecting this case, for the mere failure to mark the papers as filed did not break the force of the fact that they had been actually deposited in the hands of the proper custodian of the court records, and that the cause had been docketed. [State vs. Brown, 35 An. 342.] Defendant says, however, that the record sent up was not properly “ attested ” and therefore the deposit of the same with the clerk was as if not made.
Sections 1021 and 1026 of the Revised Statutes declare that whenever a change of venue shall have been awarded in a criminal case it shall be the duty of the clerk of court, in which the case is pending-to make out a descriptive list of the indictment, pleas and all other- *966 -documents relating to such cause and a copy of all orders which may have been entered on the minutes of the court, and to deliver the same, together with the original indictment and other papers appertaining to the cause, to the sheriff of the parish, whose duty it shall be immediately to deliver or forward the s ame to the clerk of the parish to which the cause shall have been re moved, and the clerk of the court to which any criminal cause shall be thus removed shall, on the receipt of the indictment and other papers, enter the cause upon the criminal docket of his court, and it shall be heard, tried and determined by preference in the same manner as if the proceedings had originally been instituted therein. There certainly was no occasion for the clerk of Vernon to certify to the original documents sent up. [Wood vs. Harrell, 14 An. 62; State vs. Brown, 35 An. 342.]
The endorsements thereon of filiDg by the clerk of that parish sufficiently authenticated them. The signature of the clerk of Vernon as a State officer was known to that of Sabine and to the judge of that court. We do not regard the fact that the seal used by the district clerk of Vernon should not have conformed in all respects to the design fixed by the statute for clerks of court, a material fact in this case. It certainly did not affect the jurisdiction of the Sabine court. [Wood vs. Harrell, 14 An. 62; Atchison Co. vs. Whitbeck, 48 Pac. 19]. It is not suggested that the signature attached to the record is not genuine, nor is it suggested that the record forwarded is not strictly correct. The District Judge of Sabine had enongh before him to properly satisfy him that the prosecution brought to his court rested on a legal basis, and that it could legally be proceeded with therein (State vs. Kennedy, 8 Rob. 598), and so have we.
We have examined the grounds assigned fora continuance, and the reasons assigned by the court for refusing it, and we can not say that the court abused its discretion. The summons issued for the different witnesses and the returns of the various sheriffs thereon are not in the record, and we are not in a position to know whether those officers exercised proper diligence or not. The District Judge evidently considered defendant’s complaint against them as not sustained. Defendant complains that the court in overruling the motion for the continuance should have confined the admission, which it required the District Attorney to make (that if the absent wit *967 nesses were present they would testify to the facts which accused declared they would testify to), to certain named witnesses. He contends that the admission should have been made to cover all the witnesses named in the motion. The judge does not assign his reason for making the distinction he did between the witnesses, but the facts stated by him show that those not required to be included in ,the admission were those for whom no summons had been applied and issued, and those whom the returns showed could not be found and served. The District Attorney was forced to make an admission as to the witnesses named who had been found and served, and those the summons for whom had not yet been returned. The theory of this action was evidently that the absence of the latter might form a possible basis for a continuance, while that of the former could have no legal force or bearing whatever on the question; that a contrary rule would enable the applicant for a continuance (by simply inserting in his motion names of fictitious witnesses Or persons whom the sheriff could not serve, and forcing an admission that those parties, if present, would testify to what accused declared they would do) to present a formidable array of evidence for which there was in reality no foundation whatever. We see no error in the court’s action. The contention of the defendant that the testimony of the witness Stanley should not have been received for the reason that he could not state what reply the deceased Graft made to a remark made to him by the accused just before the killing, was not well grounded. Witnesses to a particular transaction can only testify to that portion of it which they see and hear; their testimony as to that can not be excluded because something might have happened or been said which escaped their attention or notice. It is good as far as it goes. The whole transaction is to be brought out by different witnesses hearing and seeing it in its different phases. It is not apparent to us that a knowledge by the jury of the reply which Graft made to the accused would have influenced the situation in favor of the latter, for assuming that Graft had made use of some opprobrious epithet, it would not have justified defendant in shooting him. We find no legal ground for setting aside the verdict and judgment. They are hereby affirmed.