## Isom Francis v. The State.

### No. 2612.   Decided November 12, 1902.

**1.—Continuance—Diligence.**

Where the application for continuance showed that, on the return of the indictment, November 30th, defendant had subpoenas issued for the absent witnesses, who were served on December 7th, and the case was then set for trial on December 18th; but it was not shown that said witnesses were then present or not present. The case was continued and again set for trial the 13th of June. Some time in June defendant, for the first time, applied for attachments for the witnesses, and one of the witnesses was served prior to the trial; but, being absent, her whereabouts was not shown. Held, the diligence was insufficient and the continuance properly refused.

**2.—Same—On Motion for New Trial.**

The rule to test, and which governs, in the consideration of an application for continuance, on the motion for new trial, is, conceding the materiality and probable truth of the proposed testimony, would said testimony, if produced, have redounded to the benefit of defendant and secured a more favorable verdict. Where the testimony would be as to facts proved by other witnesses on the trial, and not controverted, the new trial was properly overruled in this regard.

**3.—Murder—Indictment—Bad Spelling.**

In an indictment for murder, the spelling of the word "shooting," "shorting," does not render the indictment bad where the context clearly indicates the intention of the pleader and his meaning. Indictments are not bad for lack of proper spelling or grammar.

**4.—Same—Self-Defense—Appearances of Danger—Charge.**

On a trial for murder, where the court, upon the issue of self-defense, in its charge upon threats and appearances of danger, told the jury that the question was, whether defendant had "just and reasonable grounds for believing himself to be in danger." Held, the word "just" was synonymous with reasonable, and did not qualify, limit or contradict the terms, "reasonable grounds," as used in said charge, and the jury could not have been misled by the use of the word "just" in connection with the words, "reasonable grounds for believing." Distinguishing Reeves v. State, 34 Texas Crim. Rep., 487.

**5.—Same—Murder in Second Degree—Charge of Reasonable Doubt.**

On a trial for murder, where the court, in its charge, has prescribed the rule of reasonable doubt as to the different degrees, a charge as to murder in the second degree was correct which instructed the jury that they must be satisfied that defendant formed the design to take the life of deceased, and that when the design was formed his mind was calm, deliberate and capable of cool reflection; and that he took the life of deceased in pursuance of such design, before he could be guilty of murder in the second degree.

Appeal from the District Court of Cherokee.   Tried below before Hon. Tom C. Davis.

Appeal from a conviction of murder in the first degree; penalty, imprisonment for life in the penitentiary.

, The indictment charged appellant with the murder of Wes Sloan, on the 26th of December, 1900, by shooting him with a gun.

The parties to the killing were negroes and brothers-in-law, having married sisters. They seem to have had trouble between them for some time, but what caused it is not developed in the evidence. Deceased made many threats to kill defendant. A few nights before the killing, deceased had gone to defendant's house and endeavored to shoot him with a gun and kill him with an ax. On the day· of the killing, deceased was passing where defendant lived, in his wagon with his daughter sitting by his side. Defendant came down from his house with his gun in his hand, and when within shooting distance fired upon deceased twice. Deceased jumped or fell to the ground from his wagon, and as he was running away the defendant fired upon him again, .killing him.

*Weeks & Fleager* and *Willson & Watkins,* for appellant.

*Rob't A. John,* Assistant Attorney-General, for the State.

BROOKS, JUDGE.—Appellant was convicted of murder in the first degree, and his punishment assessed at confinement in the penitentiary for life.

The first bill of exceptions complains that the court erred in overruling appellant's application for continuance for want of the testimony of Mack, Jack, and Julia Ann Alexander, and Frances Francis. Appellant was indicted November 30, 1901. The case was set for trial on December 18th. On the day the indictment was returned, appellant issued a subpoena for the four absent witnesses. On December 18th the case was continued on the application of the State. The application does not show that the four witnesses above named were present on December 18th, although the subpoenas indicate that they were served on December 7th. If these witnesses were not present at that time, and the application should show that they were or were not, then subpoenas or attachments issued for the two witnesses, Mack and Jack Alexander, might have secured their attendance upon this trial on June 13, 1902. The diligence as to the witness Julia Ann Alexander, together with Mack and Jack Alexander, is not shown, further than that on the day the case was set for trial, some time in June, appellant, for the first time, made application for attachment as to the witness. When the case was called for trial, Julia Ann Alexander was not present. The return of the application for attachment does not show her whereabouts, but the same was executed prior to the term of the trial. The motion for new trial does not show whether or not Julia Ann appeared during the progress of the trial. As to the witness Frances Francis, the diligence is the same as to the other three witnesses, except that the attachment, when finally issued, was executed upon the witness, and her absence explained, to the extent that she was sick, being about to be confined. This fact is made to appear by appellant's own testimony

as a witness in his own behalf upon the trial. We do not think the diligence disclosed by the above recital is sufficient. Teague v. State (Texas Crim. App.), 31 S. W. Rep., 401; Mitchell v. State, 36 Texas Crim. Rep., 278, 33 S. W. Rep., 367; McGrath v. State, 35 Texas Crim. Rep., 413. But concede that the diligence is sufficient; then the question arises, did the court err in refusing a new trial on account of the absence of said witnesses? The rule to test a motion for new trial under such circumstances is, even conceding the materiality and probable truth of the testimony, would the testimony have redounded to the benefit of appellant, securing a more favorable verdict to appellant if said witnesses had been present? Land v. State, 34 Texas Crim. Rep., 340; Gallagher v. State, 34 Texas, Crim. Rep., 306; Easterwood v. State, 34 Texas Crim. Rep., 400. The witnesses were not eyewitnesses, according to the application. They were merely witnesses to previous difficulties between appellant and deceased,—one occurring about a year before the homicide, in which deceased made a deadly assault upon appellant, and another difficulty occurring about two or three days before the trial, when deceased attempted to kill appellant with a shotgun, and also with an ax; and the absent witnesses would have testified that previous threats were made by deceased to kill, some communicated and some uncommunicated. The statement of facts shows that the daughter of deceased, who was the only eyewitness testifying to the killing besides appellant, admits the existence of the facts sought to be proved by the absent witnesses, and the previous threats proposed to be proved by the absent witnesses were proved by other witnesses upon the trial, and were uncontradicted and undisputed by the State. Said fact is clearly shown by the State's evidence as well as appellant's evidence. This being the State of the record, we conclude that the fact that it is entirely uncontroverted by the State, and conceded to be a fact, would not have changed the result on the trial of the case, had the absent witnesses been present and testified. It follows, therefore, that the court did not err in refusing the application for continuance, or to grant a new trial because of the overruling of said motion.

Bill number 2 complains that the court erred in permitting the witnesses for the State to testify that appellant killed deceased, Wes Sloan, by shooting him with a gun. He also moved to quash the indictment and to arrest the judgment upon the proposition that the word in the indictment, "shooting," is spelled "shorting." We have the original indictment before us, and the word relied upon as "shorting" must be read in conjunction with the context, and, in so doing, it evidently appears that the pleader did not write the word "shorting," but "shooting." At any rate, it can be so read in ascertaining what the pleader intended the word to be, and thus it is evident that he wrote the word "shooting." Furthermore, a close inspection of the indictment convinces us that the word was written "shooting," instead of "shorting," as contended by appellant. It is a well-known rule of pleading that bad spelling and ungrammatical construction will not vitiate the in-

dictment. Where the context of the indictment clearly indicates the intention of the pleader, and there can be no mistake as to his meaning, we will not hold an indictment bad for the lack of proper spelling or grammar.

Bills 3 and 5 complain of the court's charge in reference to self-defense, and the doctrine as to communicated threats. The charge complained of is as follows: "The important questions for the jury to determine are: (1) Was the defendant, at the time he fired the fatal shot, in present danger of death or serious bodily harm, or were the circumstances such as to afford him just and reasonable grounds for believing himself to be in such danger?" And then follows the following charge: "(2) Was the shooting done in good faith to protect himself from such danger or threatened danger? If both these questions can be answered in the affirmative, the shooting would be justifiable. The defendant, under the law, would have the right to defend himself from the appearances of danger, the same and to the same extent as he would were the danger real. That the danger appeared real to the defendant is all the law requires, to justify him in acting; and, in passing upon the question as to the defendant's right to act, the matter must be viewed from the standpoint of the defendant." The latter clause, taken in connection with the first clause, presents the law of reasonable appearances of danger, as we understand the authorities hold it should be done. However, appellant insists that "just and reasonable grounds for believing himself to be in such danger" is an erroneous charge, in that the word "just" qualifies and limits "reasonable grounds for believing," or else is a contradiction of "reasonable grounds." The word "just" has various meanings; but the connection in which it appears in this charge seems to be based upon the definition "rightful, legitimate, well founded," given in the Century Dictionary. Our Penal Code provides that all words in the code must be used in their ordinary signification. When so construed, "just ground" for believing must necessarily be a reasonable ground. It does not have to be an accurate ground, nor does it have to be upon actual facts, or the real facts that exist. If the belief is reasonable, it is just, in that it is well founded. An unreasonable belief could not be a just belief, and a just belief must necessarily be a reasonable belief, and just grounds for believing must be reasonable grounds for believing. In other words, the words seem to be synonymous, in the sense in which they are used in this charge. Be this as it may, the latter clause of the charge above quoted explains in an explicit manner the meaning, wherein the court tells the jury: "Defendant, under the law, would have the right to defend himself from the appearances of danger, the same and to the same extent as he would were the danger real. That the danger appeared real to defendant is all the law requires, to justify him," etc. The jury could not have been misled by the use of the word "just" in connection with "reasonable grounds for believing." We would suggest, however, that, in writing a charge of this character, no adjective other than that required by the stat-

ute, to wit, "reasonable," should be attached to "belief," where appellant is relying upon reasonable grounds for believing himself in danger. The word "reasonable" carries its own meaning, and needs no other qualifying adjective to make its meaning manifest to the jury. However, in the connection in which it appears in this charge, concede that it was erroneous; we do not think it was such an error as prejudiced the rights of appellant. Appellant relies upon the case of Reeves v. State, 34 Texas Crim. Rep., 487. In that case the court gave the following charge: "If you believe from all the evidence before you in this case that at the time of the killing, defendant, E. J. Reeves, shot Tom James, but the defendant believed, and was justified in believing, from the acts, words, or conduct of the said Tom James before or at the time, that it was necessary to shoot him, the said Tom James, to save his own life, or protect himself from serious bodily injury, then he would be guilty of no offense, and you should acquit him." It is true in the Reeves case, as in the case at bar, the court followed the above charge with another on apparent as well as real danger, yet we there held that "justified in believing," under the circumstances, was calculated to mislead and confuse the jury, and to require them to believe the acts, words, and conduct of the said James must have been real, and of that tangible character which would justify his belief of danger. We do not think that the word "justified," as used in the latter charge, is synonymous with or has the same meaning as the word "just," used in the charge in this case. "Justified," as used in the Reeves case, would mean real danger, and would be a contradiction of the subsequent charge on apparent danger. We therefore hold that the Reeves case, which is so earnestly insisted upon by appellant in his able brief, is not authority in point, and can be clearly distinguished from the charge now under consideration.

Appellant, in his fourth bill, complains that the court erred in charging the jury that they must be satisfied that defendant formed the design to take the life of deceased, and that when the design was formed his mind was calm, deliberate, and capable of cool reflection, and that he took the life of deceased in pursuance of such design, before he would be guilty of murder in the second degree. In other portions of the charge the court properly lays down the rule of reasonable doubt as to the different degrees of homicide. We do not think there was any error, in this charge. The charge of the court is correct.

No error appearing in the record, the judgment is affirmed.

*Affirmed.*

HENDERSON, Judge (Concurring).—It does not occur to me that there is any difference in the meaning of the terms "just ground for believing," as used in the charge in this case, and the expression "defendant was justified in believing," as used in the Reeves case, 34 Texas Crim. Rep., 483. In the latter case, however, the vice is in the charge applying the law to the facts, whereas in the case at bar the error is in

that part of the charge defining the right of self-defense; but, in the instruction applying the law to the facts, the charge is full on the law of the reasonable appearances of danger. Since the decision in the Reeves case, article 723, White's Annotated Code of Criminal Procedure, has been enacted; and I do not believe that the charge in the present case, explained as above, was calculated to injure appellant's rights. I therefore concur in the disposition of the case.