STATE, RESPONDENT, *v.* LU SING, APPELLANT.

(No. 2,263.)

(Submitted February 27, 1906. Decided March 19, 1906.)

*Criminal Law—Homicide — Information — Evidence — Admissions — Instructions — Verdict — Sentence — Presumptions— Judicial Notice.*

Murder—Information—Form—Misspelling.
   1.   *Held,* under Penal Code, sections 1842 and 2600, that an information alleging that defendant feloniously, willfully and of his (defendant's) *"deliberatedly"* premeditated malice aforethought, committed the homicide in question, was not fatally defective because of the mere misspelling of the word "deliberately."

Murder—Information—Sufficiency—Appeal.
   2.   The question of the sufficiency of an information charging homicide may be raised for the first time in the appellate court.

Murder—Information—Sufficiency.
   3.   To support a judgment of conviction of murder of the first degree, it is not necessary that the information should allege that the acts which resulted in the homicide were done deliberately, the allegations sufficient for a common-law indictment sufficing for an information in this regard.

Murder—Witnesses—Competency—Chinaman—Ability to Tell Nature of Oath.
   4.   A Chinaman who, upon being tested as to his competency as a witness, stated that he could tell what he knew and that what he would say would be the truth, but that he did not know the nature of an oath, was qualified to testify under Code of Civil Procedure, section 3161, he not falling within the exceptions noted in section 3162, as amended (Laws 1897, p. 245), or those mentioned in section 3163 of the same Code.

Murder—Evidence—Admissions—Competency.
   5.   Where, in a prosecution for murder, the peace officer who took the defendant, a Chinaman, into custody, testified that on his way to jail the latter attempted to converse with him, but that he only understood a portion of what he said, reciting the part so understood by him, it was not error for the trial court to refuse to strike out all of the witness' testimony relative to the conversation on an objection that, since he had not understood all he should not be permitted to testify to a portion only, it appearing that the court had properly cautioned the jury as to the weight to be given by them to this character of evidence.

Murder—Objections to Evidence—Form.
   6.   An objection to questions asked defendant, charged with murder, on cross-examination that the evidence sought was "incompetent, irrelevant, immaterial and not cross-examination" was too general, where it was apparent that the evidence sought was material.

Murder—Instructions—Commenting on Evidence.

    7. An instruction requested by defendant, accused of homicide, that the absence of all evidence of an inducing cause or motive to commit the crime, when the fact is in reasonable doubt as to who committed it, ''affords a strong presumption of innocence,'' was properly refused, it being misleading and an invasion of the province of the jury.

Murder—Verdict—Time for Pronouncing Sentence—Statutes.

    8. A verdict of guilty of murder of the first degree was returned on November 10, 1905. On the day following judgment was pronounced, over objection of the defendant that under section 2210 of the Penal Code he was entitled to two full days after the rendition of the verdict, before sentence. *Held,* that the court may not pronounce judgment before the expiration of two days after rendition of the verdict, provided the term of court lasts that long; otherwise the time of pronouncing judgment must be postponed to a date as remote as can reasonably be fixed within the current term of court.

Murder—Time for Pronouncing Sentence—Presumptions.

    9. When two days did not intervene between the rendition of a verdict of guilty in a capital case, and the pronouncement of judgment (Penal Code, sec. 2210), it will be presumed on appeal, in the absence of anything in the record to the contrary, that the court did not remain in session after the date on which the judgment was pronounced.

District Courts—Terms—Judicial Notice.

    10. Judicial notice will be taken by the supreme court of the fact that there are two or more counties in a certain judicial district in this state, that such district court has fixed terms, expiring at certain periods, and that the court is not open for the transaction of business at all times as in a district embracing one county only.

*Appeal from District Court, Gallatin County; W. R. C. Stewart, Judge.*

LU SING was convicted of murder of the first degree. He appeals from the judgment and from an order denying him a new trial. Affirmed.

*Mr. J. L. Staats,* for Appellant.

The word ''deliberatedly'' has no meaning whatever, whether legal or otherwise, and as deliberation is an essential element of murder in the first degree, the information does not support the judgment of conviction in this case. (*People* v. *Doyell,* 48 Cal. 85.)

Again, section 1947 of the Penal Code provides and implies that the defendant may be convicted of an offense necessarily included in the offense charged. If the information, then, is

insufficient as to the main offense, no lower degree of the crime charged is included by our statute. At most the defendant could only be convicted of murder in the second degree. (*People* v. *Callaghan,* 2 Idaho, 156, 9 Pac. 414, and cases cited.)

Purported confessions of the defendant do not go to the weight of the testimony, but it is a question for the court. (*People* v. *Ah How,* 34 Cal. 218. See, generally, *State* v. *Kilburn,* 16 Utah, 187, 52 Pac. 277; Greenleaf on Evidence, sec. 214; *State* v. *Buster,* 23 Nev. 346, 47 Pac. 194.) The latter lays down the same rule, and while in that case the court held that if the confession is corroborated by other witnesses, the error was harmless, but in this case the testimony of witness Williams as to the statement of defendant to him on the way to jail was not corroborated by anyone, and the testimony of Robertson and Williams as to the statements of defendant at the jail were not corroborated by anyone else, and they do not testify alike in that respect.

In view of the fact that the court gave instruction No. 23 on the subject of motive, it was error for that reason, if for no other, to refuse to give the requested instruction. The state impliedly conceded in instruction 23 that there was no motive shown by the testimony, and while if there had been none given by the state on the question of motive, it might well be doubted whether the defendant was entitled to have the requested instruction given, but inasmuch as instruction 23 was given, and no other instruction was given as the equivalent of the refused instruction, it is well settled that it is error for the court to refuse to give it. (*State* v. *Foley,* 144 Mo. 600, 46 S. W. 733; *Clough* v. *State,* 7 Neb. 344; *Vaughan* v. *Commonwealth,* 85 Va. 672, 8 S. E. 584; Hughes' Instructions to Juries, secs. 264, 781.) The refusal to give said instruction was error in any view of the case, and this court can review the same, regardless of the evidence in the cause. (*State* v. *Mason,* 24 Mont. 340, 61 Pac. 861; *People* v. *Levison,* 16 Cal. 98, 76 Am. Dec. 505.)

*Mr. Albert J. Galen,* Attorney General, and *Mr. E. M. Hall,* Assistant Attorney General, for Respondent.

MR. JUSTICE HOLLOWAY, delivered the opinion of the court.

Lu Sing was convicted of murder of the first degree, and appeals from the judgment and from an order denying him a new trial.

1. It is contended by appellant that the information does not charge any higher offense than murder of the second degree, and therefore does not support the judgment. The information charges that the acts by which the homicide were committed were done "feloniously, willfully, and of his [defendant's] *deliberatedly* premeditated malice aforethought." The word "deliberatedly" is used repeatedly instead of "deliberate," as employed in the Code. (Penal Code, sec. 352.) It is urged that the word "deliberatedly" is wholly meaningless, and without some appropriate word importing deliberation the information does not charge murder of the first degree, and that this question may be raised in the supreme court for the first time.

So far as the question of procedure is concerned, we think appellant is correct. (*Territory* v. *Young,* 5 Mont. 242, 5 Pac. 248; *Territory* v. *Duncan,* 5 Mont. 478, 6 Pac. 353.) But we are not satisfied that by reason of the poor spelling—the mere insertion of the letter "d" between the letter "e" and the letters "ly" of what was evidently intended to be the word "deliberately"—the information is rendered fatally defective as one charging murder of the first degree; for, even assuming that it is necessary to allege the facts which distinguish murder of the first degree from murder of the second degree, in order to sustain a conviction of murder of the first degree, still, we think that no one could have been misled as to the meaning of this information. The authorities are practically unanimous in holding that an error of this character will not vitiate the information. (*Lefler* v. *State,* 122 Ind. 206, 23 N. E. 154; *Terrell* v. *State,* 41 Tex. 463; *State* v. *Williamson,* 43 Tex. 500; *State* v. *Smith,* 63 N. C. 234; *State* v. *Myers,* 85 Tenn. 203, 5 S. W. 377;

12 Cyc. 761.) Furthermore, sections 1842 and 2600 of the Penal Code provide:

"Sec. 1842. No indictment or information is insufficient, nor can the trial, judgment, or other proceedings thereon be affected by reason of any defect or imperfection in matter of form which does not tend to the prejudice of a substantial right of the defendant upon its merits."

"Sec. 2600. Neither a departure from the form or mode prescribed by this Code in respect to any pleading or proceeding, nor an error or mistake therein, renders it invalid, unless it has actually prejudiced the defendant, or tended to his prejudice, in respect to a substantial right."

If the word "deliberately" had been used, the information would not have been couched in the most elegant English, but the objection now made could not have been urged seriously; and, while the evident purpose of the pleader was to use the word "deliberately," we think the mere misspelling of it does not render the information defective. "When the context and subject matter are taken into consideration, the word intended to be used cannot be misunderstood." (*State* v. *Williamson,* 43 Tex. 500.)

Under a statute similar to the one now in force it has been held by this court that it is not necessary to allege that the acts done were done deliberately in order that the information may be sufficient to sustain a conviction of murder of the first degree. It is still held that allegations sufficient for a common-law indictment will be sufficient for an information. (*Territory* v. *Stears,* 2 Mont. 324, approved in *Territory* v. *McAndrews,* 3 Mont. 158, and in *State* v. *Metcalf,* 17 Mont. 417, 43 Pac. 182.) The same rule is also announced in *People* v. *De La Cour Soto,* 63 Cal. 165.

2. One Mar Quong, a Chinaman, was called as a witness on behalf of the state, but before testifying was tested as to his competency as a witness by defendant's counsel. It is now contended that, upon the showing made, defendant's objection to the witness testifying should have been sustained. The examination of the witness related principally to his religious belief. He

testified in the first instance that he knew the nature of the oath he had taken, but, after being cross-examined at some length, said that he did not. He said he could tell what he knew, and that what he would say would be true. He testified that he believed in the Christian religion and knew that the Christian God is a supreme being. He also stated that he did not know what kind of an oath is administered in the courts in China.

Section 3161 of the Code of Civil Procedure provides: "All persons, without exception, otherwise than as specified in the next two sections, who, having organs of sense, can perceive, and perceiving, can make known their perceptions to others, may be witnesses. Therefore, neither parties nor other persons who have an interest in the event of an action or proceeding are excluded; nor those who have been convicted of crime; nor persons on account of their opinions on matters of religious belief; although, in every case, the credibility of the witness may be drawn in question, as provided in section 3123." The witness does not come within any of the exceptions noted in section 3162 as amended (Laws 1897, p. 245), or in section 3163, and was apparently competent under section 3161. We do not find any authority for applying the test sought to be applied in this case, namely, the ability of the person offered as a witness to "tell the nature" of the oath administered to witnesses in the courts of this state. So far as this record discloses, there was not any attempt to show that the witness did not understand the obligation of his oath or the penalty for perjury.

3. E. H. Williams, a policeman in the city of Bozeman, who arrested the defendant soon after the homicide was committed, testified for the state, over the objection of the defendant, to a part of a conversation which took place between himself and the defendant on their way to, and at, the city jail. The witness testified that the defendant spoke English very poorly, and that he could not understand all that defendant said, but did understand the defendant's statement: "If I kill him, me good man. If I no kill him, no good." And again: "If me no kill him, me no good man; and if Tom Sing dead, me die happy." Defendant moved to strike out the testimony of the witness, on the

ground that he had not understood all that the defendant said to him and ought not to be permitted to testify to a portion only. The motion was denied, and error is predicated on this ruling. In support of his contention counsel for appellant cites *People* v. *Gelabert,* 39 Cal. 663, decided in 1870, and *State* v. *Buster,* 23 Nev. 346, 47 Pac. 194, decided in 1896.

The opinion in *People* v. *Gelabert* is very brief and cites no authorities in support of the conclusion reached. The reason given for the conclusion goes to the weight, rather than to the competency, of the evidence. 1 Greenleaf on Evidence, section 214, is cited, not, however, in support of the conclusion reached by the court, but in support of the oft-repeated declaration of courts and text-writers that evidence of extrajudicial confessions shoud be received with great caution, because of the danger of mistake of the witness arising from his misapprehending what the defendant said, his unintentional misuse of a particular word; or, if the witness does not remember the exact words used by the defendant, his failure to express in his own language the meaning intended to be conveyed by the defendant; and, finally, because of the infirmity of memory. But all of this is directed to the weight, rather than the competency, of the evidence, and it is well for the trial court to warn the jury as to the caution to be exercised respecting this character of evidence (Code Civ. Proc., sec. 3390, subd. 4) as indicated above, as was fully done by the trial court in this case.

The case of *State* v. *Buster* is of no weight as a precedent, for the reason that, while the supreme court of Nevada holds that the evidence given by the witness Cozzens, who could not understand all the defendant said, was incompetent, the error in receiving it was, nevertheless, cured by the fact that other witnesses, who did fully understand what the defendant said, corroborated the testimony of Cozzens, apparently overlooking the fact that the jury might have believed the witness Cozzens, and refused absolutely to believe the other witnesses, who corroborated him, with the result, if the court's conclusion was right in the first instance, that the defendant was convicted upon evidence held to be wholly incompetent.

No fault is found with the authorities which hold that where the state offers only a part of the conversation embodying a confession, the defendant has a right to have the whole of the conversation before the jury; but the great weight of authority and reason hold that merely because a witness did not hear all of the conversation, or did not understand it all, does not render incompetent what he did hear or understand. The evidence goes to the jury for what it is worth. Its value may be greatly impaired by the fact that the witness heard or understood only a part of what was said. But where the jury is cautioned, as was done in this case, there can be no error in the reception of the evidence, merely because the witness can give only a portion of what was said. (*Westmoreland* v. *State*, 45 Ga. 225; *Woolfolk* v. *State*, 85 Ga. 69, 11 S. E. 814; *State* v. *Elliott*, 15 Iowa, 72; *State* v. *Moelchen*, 53 Iowa, 310, 5 N. W. 186; *State* v. *Madison*, 47 La. Ann. 30, 16 South. 566; *State* v. *Vallery*, 47 La. Ann. 182, 49 Am. St. Rep. 363, 16 South. 745; *State* v. *Daniels*, 49 La. Ann. 954, 22 South. 415; *Commonwealth* v. *Pitsinger*, 110 Mass. 101; 3 Wigmore on Evidence, sec. 2100; Wharton's Criminal Evidence, sec. 688.) Long after the decision in *People* v. *Gelabert* was rendered, the supreme court of California held to this same doctrine announced by the courts above. (*People* v. *Daniels*, 105 Cal. 262, 38 Pac. 720; *People* v. *Dice*, 120 Cal. 189, 52 Pac. 477.)

There cannot be any reason advanced for the admission of the testimony of witnesses who heard only a part of a conversation which will not apply equally to the testimony of a witness who heard it all but only understood or remembered a portion of it. We think the evidence was properly admitted.

The same objection is made to the testimony of the witness John Robertson; but the record does not support the contention. So far as disclosed, the witness Robertson understood the defendant and detailed all the conversation which he had with him.

4. Objections were made to certain questions asked the defendant on cross-examination, and errors are predicated upon

the refusal of the court to sustain them. We are not prepared to say that the court's rulings were erroneous, even had the objections been more specific; but the fact is that the objection in every instance was that the evidence sought was "incompetent, irrelevant, immaterial and not cross-examination." The evidence was certainly material. The objections were too general and were properly overruled. (*State* v. *Black,* 15 Mont. 143, 38 Pac. 674.)

5. The defendant offered an instruction, numbered 2, as follows: "If the·evidence fails to show any motive on the part of the accused to commit the crime charged in the information, this is a circumstance in favor of his innocence which the jury ought to consider, together with all the other facts and circumstances, in making up their verdict. The absence of all evidence of an inducing cause or motive to commit the crime, when the fact is in reasonable doubt as to who committed it, affords a strong presumption of innocence." It was refused. The first sentence of the instruction correctly states the law, but the second sentence renders the whole instruction erroneous: a. In that it would necessarily confuse the jury by leading them to infer that after they had come to a conclusion that there was a reasonable doubt as to who committed the murder, they must still pursue their investigation of the case further; b. In that it would have been highly improper for the trial court to have said that certain evidence "affords a strong presumption of innocence." Whether the presumption is strong or otherwise is for· the jury to determine, and any comment upon the weight of the evidence by the court is an unwarranted invasion of the province of the jury. (*State* v. *Sullivan,* 9 Mont. 177, 22 Pac. 1088; *State* v. *Gleim,* 17 Mont. 29, 52 Am. St. Rep. 655, 41 Pac. 998, 31 L. R. A. 294.)

6. The verdict was returned on November 10, 1905, and judgment was pronounced on· November 11, 1905, over objection of the defendant that he was entitled to two full days after the rendition of the verdict, before sentence. Section 2210 of the Penal Code provides: "After a plea or verdict of

guilty, or after a verdict against the defendant on the plea of a former conviction or acquittal, if the judgment be not arrested or a new trial granted, the court must appoint a time for pronouncing judgment, which, in cases of felony, must be at least two days after the verdict, if the court intend to remain in session so long; but if not, then at as remote a time as can be reasonably allowed." Counsel for appellant construes this section to mean that in any event the defendant is entitled to two full days after the verdict is rendered before judgment is pronounced, and, if the court is not to remain in session for that length of time, then judgment must be pronounced at a subsequent general or special term. Of course, if appellant's construction of this section is correct, this judgment was pronounced prematurely. But we do not agree with counsel in his construction of the section.

The section means that the defendant is entitled to two days after the verdict is returned before judgment is pronounced, provided the term of court lasts that long. But, if the term is not to continue for two days after the verdict is returned, then the time for pronouncing judgment shall be postponed to a date as remote as can reasonably be fixed within the then current term of court. Whether this was done in this instance does not appear from the record. The burden of showing error rests upon the appellant, and, in the absence of anything in the record indicating that the court was to remain or did remain in session after November 11th, this court must presume that the district court did its duty; at least, the presumption will not be indulged that a substantial right of the defendant was invaded or denied. The minutes of the court should have shown that, when the court fixed the time for pronouncing judgment, it also announced that court would not remain in session longer than the time so fixed, if that was done. This court takes judicial notice of the fact that there are two counties in the ninth judicial district, and that the court has fixed terms, which, of necessity, must expire at certain

periods, and that the court is not open for the transaction of business at all times, as in a district having but a single county.

The judgment and order are affirmed.

*Affirmed.*

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE MILBURN concur.