FLOYD BLACKWELL, *Plaintiff in Error*, v. THE STATE OF FLORIDA, *Defandant in Error.*

Opinion Filed April 20, 1915.

1. Misprisions in an indictment in writing "bulltes" for "bullets" and "premediatted" for "premeditated" are not fatal under Gen. Stats. Section 3962, the words being correctly spelled in other portions of the typewritten indictment.

2. A map correctly drawn to a scale representing the scene of a homicide is not rendered inadmissible because of the use of arrows to indicate the supposed direction and distance walked by the accused, there being no material difference in the testimony on this point.

3. The use of an inapt word by the court in sustaining an objection to a question is held not harmful.

ON PETITION FOR REHEARING.

The use of a map drawn by an eye-witness to illustrate his testimony, and which accords with all the evidence does not constitute error.

Writ of error to Circuit Court for Lake County; W. S. Bullock, Judge.

Judgment affirmed, and rehearing denied.

*H. C. Duncan* and *Davis & Giles,* for Plaintiff in Error;

*T. F. West,* Attorney General, and *C. O. Andrews,* Assistant, for the State.

COCKRELL, J.—Under an indictment for the murder of Ernest Hampton, Blackwell was convicted of murder in the second degree and sentenced to life imprisonment.

The indictment was attacked by motion to quash, because the word "bullets" was written "bulltes," and by a motion in arrest because the phrase "premeditated design" used in our indictments for murder appears in one place as "premeditatted design."

The strictness of the Common Law in the construction of indictments has been materially modified by our statute, Gen. Stats. section 3962, which forbids that an indictment be quashed or judgment arrested on account of defect in form, unless the indictment be so vague, indistinct and indefinite as to mislead the accused or embarrass him in the preparation of his defense, or expose him after conviction or acquittal to substantial danger of a new prosecution for the same offense. It is obvious that the objections referred to are matters of form only, being due wholly to clerical misprisions in typewriting. The word "bullet" had been previously correctly spelled in describing the loaded gun with which the assault was committed, and also the phrase premeditated design had been correctly written into the indictment. There can be no doubt that the statute should properly be applied to imperfections of this technical character. See State v. Lu Sing, 34 Mont. 31, 85 Pac. Rep. 521; Francis v. State,

44 Tex. Crim. Rep. 246, 70 S. W. Rep. 751; St. Louis v. State, (Tex. Crim. Rep.) 59 S. W. Rep. 889.

Objection was made to a map that was filed in evidence. It correctly represented the permanent objects surrounding the scene of the homicide, and was drawn to a scale by a civil engineer. A marked place was indicated on the map, as to which the witness offering it was not permitted to testify, and this mark was subsequently identified without objection and without contradiction as the spot where the body of Hampton was found. There were also certain arrow marks upon the map, indicating in a general way the route taken by Blackwell between the first encounter with Hampton and his return with a shotgun. The only object of this was to show the distance travelled, as a basis for proof of premeditation, and it was admitted by all that the accused walked at least this far. The variations in the witnesses on this point were immaterial, and in no sense contradictory.

The court was not asked to restrict the evidentiary character of the map, and its correctness was questioned neither by the court nor by counsel, as a representation of the permanent objects.

A witness testified that about ten minutes before the fatality, he was sitting on the porch of Hampton's home, with Mr. Hampton, Mrs. Hampton and Blackwell; that Mrs. Hampton expressed a wish to go to a drug store, and Blackwell offered to accompany her, to which offer Hampton objected. Blackwell persisted that he would go with her, whereupon Hampton got up, walked over to Blackwell's chair, told him he was not going with her, referring to him as a sneaking little cur. The defendant's counsel repeatedly asked questions upon the assumption

that this constituted an assault, and the court ruled against the form of the question. Finally in a colloquy the counsel argued to the court that such acts constituted an assault and the judge replied he did not "view it so, especially when it is in response to a demand addressed to a man's wife." While the use of the word "demand" may not be quite authorized by the expression just used by Blackwell, yet it must be borne in mind that defendant's counsel had by repeated efforts tried to get before the jury an acquiescence in the idea that an assault had been committed upon Blackwell by Hampton, and the court used the word "demand" to explain Hampton's mental attitude toward Blackwell, as the court understood it. Mere words do not constitute an assault, and nothing further had been developed at that time; nor had there been a suggestion of improper intimacy between Blackwell and Mrs. Hampton. The evidence further shows that Blackwell after this incident left Hampton's house, went to the house of Mr. Wilson to procure a gun, failing there, went to the house of Mr. Wiggins, some distance away, where he did procure a gun, then returned to the home of Hampton, found him seated quietly on the porch, and announced that he was "protected," referring to the gun. We find no possible harm in the use of the inapt word.

The other assignments do not call for special discussion by us, and the sufficiency of the evidence to support the verdict is not questioned.

Judgment affirmed.

TAYLOR, C. J., AND SHACKLEFORD, WHITFIELD AND ELLIS, JJ., concur.

## ON REHEARING.

COCKRELL, J.—In his petition for rehearing, the plaintiff in error suggests that we overlooked his third assignment of error, which is based upon his exception to the introduction of a map prepared by Mr. Frost. We did not overlook this assignment, but we did not discuss it in the opinion, because we understood from the oral argument of counsel that the Wilson map was considered the real vulnerable point in the State's case. Mr. Frost was permitted to use this map, which he had drawn, to illustrate his testimony, as to permanent physical objects, and also as to the locations of the Hamptons, Blackwell and himself during various stages of the tragedy. We know of no valid objection to this method of clarifying testimony, nor was any pointed out to us by counsel. Morever we find no such substantial variance in the evidence as would render the admission of the map a reversible error, if there were authority for holding it incompetent.

Rehearing denied.

TAYLOR, C. J., AND SHACKLEFORD, WHITFIELD AND ELLIS, JJ., concur.