STATE, Respondent, *v.* METCALF, Appellant.

[Submitted January 9, 1896.   Decided January 13, 1896.]

Murder—*Indictment.*—An indictment charging the killing or murder to have been done by the defendant "of his deliberate premeditated malice aforethought" sufficiently charges that the killing was deliberate and premeditated within section 21, 4th division Compiled Statutes making a "willful, deliberate and premeditated killing" murder in the first degree.

Continuance—*Affidavit.*—Where the defendant's affidavit for a continuance to secure the testimony of an absent witness who was present at the killing, shows that the utmost diligence was used to locate the witness and secure his testimony; that he had been located in another state about eighteen days before the trial, and a commission immediately issued to take his testimony which was not secured in time for the trial; that his evidence was material and the same facts could not be proved by any other witness, and is corroborated as to the diligence used, the denial of a continuance, is error.

Witness—*Intoxication—Failure of state to produce.*—The fact that a witness was stupidly drunk at the time of the homicide does not excuse the state from producing him at the trial and placing him on the witness stand upon the request of the defendant, when the state was relying upon circumstantial evidence, and it appeared that though the witness could not have seen the killing he was in a position to hear what was said. (*Territory* v. *Hanna,* 5 Mont. 248; *State* v. *Russell,* 13 Mont. 164, cited.)

Instruction—*D fendant's evidence.*—In charging the jury as to the weight to be given to the defendant's evidence, it is error to refuse to instruct that the fact that he is the defendant "is not of itself sufficient to impeach or discredit his testimony or evidence."

*Appeal from Fifth Judicial District, Beaverhead County.*

Conviction for murder in the second degree.   The defendant was tried before Showers, J.   Reversed.

*Smith & Word, W. S. Barbour* and *Henry R. Melton,* for Appellant.

The continuance should have been granted, and a refusal to grant a continuance upon a proper showing is ground for reversal.  (*United States* v. *Fox,* 3 Mont. 517, § 253 Code Civil Proceed.; *Territory* v. *Davis,* 10 Pac. 359; *Territory* v. *Kinney,* 9 Pac. 599; *State* v. *Lund,* 31 Pac. 146; *Sutton* v. *People,* 10 N. E. 376.)  It was obligatory on the state to call the persons who were witnesses of the homicide.   See *Territory* v. *Hanna,* 5 Mont. 248; *Hurd* v. *People,* 25 Mich. 406; *Wellar* v. *People,* 30 Mich. 23; *Mayes* v. *State,* 24 S. W. 421;

*Thompson* v. *State*, 17 S. W. 448; *Porter* v. *State*, 1 Tex. app. 394; *Scott* v. *State*, 19 Tex. app. 325; 1 Greenleaf on Evidence § 82, 3 Blackstone, Com, 371.

*Henri J. Haskell*, Attorney General, for the State, Respondent.

PEMBERTON, C. J.—The defendant was tried in the district court in Beaverhead county upon an information charging him with the crime of murder in the first degree, alleged to have been committed in that county. He was found guilty of murder in the second degree, and sentenced to imprisonment in the penitentiary for a term of 30 years. From an order denying a new trial and the judgment of the court the defendant appeals.

The information, omitting the formal parts, is as follows: ''That Paul Metcalf, late of the county of Beaverhead, on or about the 12th day of August, A. D. 1894, at the county of Beaverhead, in the state of Montana, in and upon one Frank G. Hunter, then and there being, willfully, feloniously, and of his deliberate, premeditated malice aforethought, did make an assault, and that the said Paul Metcalf a certain pistol, to wit, a revolving pistol, then and there loaded and charged with gunpowder and leaden bullets, which said pistol he, the said Paul Metcalf, in his hands then and there had and held, then and there willfully, feloniously, and of his deliberate, premeditated malice aforethought did discharge and shoot off to, at, against, and upon the said Frank G. Hunter, and that the said Paul Metcalf with the leaden bullets aforesaid, out of the pistol aforesaid, then and there, by force of the gunpowder aforesaid, by the said Paul Metcalf discharged and shot off as aforesaid, then and there willfully, feloniously, and of his deliberate, premeditated malice aforethought did strike, penetrate, and wound him, the said Frank G. Hunter, in and upon the left side of the head of him, the said Frank G. Hunter, giving to him, the said Frank G. Hunter, then and there, with the leaden bullets aforesaid, so as aforesaid discharged and shot out of the pistol aforesaid by the said

Paul Metcalf, in and upon the left side of the head of him, the said Frank G. Hunter, two mortal wounds, of which said mortal wounds he, the said Frank G. Hunter, then and there instantly died. And so the said Everton G. Conger, county attorney as aforesaid, who prosecutes as aforesaid, doth say and charge that the said Paul Metcalf, him, the said Frank G. Hunter, in the manner and by the means aforesaid, willfully, feloniously, and of his deliberate, premeditated malice aforethought did kill and murder, contrary to the form of the statute in such case made and provided, and against the peace and dignity of the state of Montana.''

The defendant demurred to the information generally and specially. The grounds of the special demurrer are that: ''The acts constituting the offense (if any is stated) are stated in an indefinite, ambiguous, and uncertain manner, in this: it cannot be determined therefrom whether the defendant is charged with a simple assault, an assault and battery, or murder in the first or second degree, or with any other offense known to the laws of the state of Montana; that the defendant herein is not charged with a premeditated killing or murder, or that the act was done to, at, and towards the said Hunter with premeditation; and that said information does not charge a premeditated and deliberate murder or killing.'' The court overruled the demurrer, and defendant assigns this action of the court as error.

Our statute (section 21, p. 505, Comp. Laws 1887) defines the crime of murder, and the two degrees thereof, as follows: ''All murder which shall be perpetrated by means of poison, or lying in wait, torture, or by any other kind of willful, deliberate and premeditated killing, or which shall be committed in the perpetration or attempt to perpetrate, any arson, rape, robbery or burglary, shall be deemed murder of the first degree; and all other kinds of murder shall be deemed murder of the second degree.'' Our statute is a copy almost literally of the Pennsylvania statute of 1794, the only difference being that our statute has the word ''torture'' in it. The information in this case is a substantial copy of the indictment given

as a precedent by Bishop to be used under the Pennsylvania statute and statutes of like character. 2 Bish. Cr. Proc. (3d Ed.) § 564. It is also in substantial conformity with the indictment in *Territory* v. *Stears*, 2 Mont. 324, and cited with approval in *State* v. *Northrup*, 13 Mont. 522, 35 Pac. 228. Counsel for the defendant insist that the information does not charge that the *killing* or *murder* was premeditated and deliberate; that the words of the information charging the killing or murder to have been done ''of his deliberate, premeditated malice aforethought,'' do not fill the requirements of the statute that the killing shall be deliberate and premeditated. There are authorities holding this view. But it is difficult to discern any substantial difference or distinction between the expressions ''deliberate and premeditated killing'' and ''killing with deliberate and premeditated malice aforethought.'' Some authorities do draw the distinction, but we do not think it can be held that there is such a distinction as to prejudice the substantial rights of the defendant. Under statutes like the Pennsylvania law, the parent of our statute, as said in *Territory* v. *Stears*, *supra*, such information or indictment, as used in this case, has been quite generally held to be sufficient to charge murder in the first degree, and to support a conviction of such offense. Having borrowed our statute from Pennsylvania, we prefer to hold to the familiar rule that we adopt also the construction given thereto by the courts of that state.

The defendant assigns as error the action of the court in refusing to grant his motion and application for a continuance of the case. The affidavit of defendant for a continuance is as follows: ''Paul Metcalf, being first duly sworn, on oath deposes and says: That he is the defendant in the above entitled cause. That the information in said cause was filed in this court charging affiant with the crime of murder on the 23d day of February, 1895, and that affiant was arrested in the state of Missouri on the 27th day of December, 1895, and was brought to Beaverhead county, Montana, immediately thereafter, and lodged in the county jail of said county, where he has ever since been, and is now, confined. That ever since

affiant's incarceration in jail, through the efforts of his counsel and friends, he has been preparing for this trial, as hereinafter detailed.  That notwithstanding the efforts of defendant and his friends to be prepared for said trial, he cannot safely go to trial at this term for the following reasons, to wit, the absence of witnesses and evidence material to defendant, and which defendant has been unable to procure at this term of the court.    That Alden Harness is a witness material to defendant. That defendant could prove by said Harness, if present as a witness, that the deceased, Frank Hunter, was killed at his saloon, at Medicine Lodge, in Beaverhead county, on the afternoon of August 12, 1894, by affiant.   That affiant and said Harness, earlier in the day, had been to said saloon, and in company with other persons there present had taken several drinks of whisky or other liquor.   That this affiant and said Harness had left the saloon together, and parted from said Hunter without any difficulty.   That after affiant and said Harness had been gone some time, affiant discovered that he had left his gloves at said saloon, and proposed to return and get them.   That said Harness and this affiant, in company, and on horseback, returned to said saloon, and dismounted, and entered the same.   That Metcalf was a little in advance of and to the right of said Harness as they entered into said saloon, and that they passed one person, called 'Irish Jack,' sitting on or near the saloon door steps.  That no one was in the saloon when said Metcalf and Harness entered except Hunter. That upon said Hunter seeing Metcalf enter, and when said Metcalf was a few feet within said saloon, and three or four feet from the front door, Hunter said to Metcalf, 'Get out of my saloon, or I will kill you, you son of a bitch;' to which Metcalf answered, and said, 'I want my gloves; that is all I want.'    That as Hunter spoke to Metcalf, Hunter started to go behind the bar in said saloon, and in doing so was facing rather towards Metcalf and the front of the building.   That Hunter spoke in a loud, angry, and very threatening manner to Metcalf, and was in the act of reaching under the bar, where he always kept a revolver or

pistol, and at the same time was watching said Metcalf, and was slightly stooping, and watching Metcalf, with his head above the counter. That Hunter's manner was extremely threatening and menacing; and that while said Hunter was advancing towards said Metcalf, and reaching in the direction of his pistol, said Metcalf fired, hitting said Hunter. That no other person was in said saloon, or within sight of the act, or saw the shooting, than said Harness and the affiant, during all of this time. That said Harness would swear he was near Metcalf, a little to Metcalf's left and rear, but in full view of both Hunter and Metcalf. That said Harness would swear that he and this affiant both knew Hunter kept a pistol at the place under the bar to which Hunter was advancing, and for which he was reaching, when he was shot. That said Harness would further swear that he knew the character of Hunter for peace and quiet, and that he was a bad character; very quarrelsome and dangerous. That said Harness would further swear that Hunter began the difficulty with Metcalf, and was distant from him only 14 to 16 feet when he was shot by Metcalf, and was advancing towards Metcalf, and towards his (Hunter's) pistol. That said Harness would further swear that he had known Hunter for some considerable time prior to the shooting. That Hunter was unfriendly towards affiant, and that on several occasions said Hunter had said to Harness that he (Hunter) would kill Metcalf, and that prior to the shooting of said Hunter said Harness had communicated to this affiant the threats Hunter had made to kill affiant. That after the said shooting the said Harness left Montana with affiant, and was present with affiant at Metlin's ranch a short time after the killing, and affiant says he cannot prove the foregoing by any other witness. That on the night after the killing said Harness and this affiant left the state of Montana. That as soon as affiant was charged and arraigned for the killing of Hunter, through the aid of affiant's brother and his attorneys he began inquiries to ascertain the whereabouts of said Harness, and on or about May 25th this affiant, through his brother, Theodore Metcalf, learned for the first time that said Alden Harness was in or

near the town of Horton, Brown county, state of Kansas, and that said Harness' deposition could be taken in said town and county; and, relying upon said statement and information, the facts were given to affiant's counsel, and steps were taken to procure the deposition of said Harness before the clerk of the district court of Brown county, state of Kansas; and on the 28th day of May, 1895, notice to take said deposition was served on the county attorney of Beaverhead county, Montana, with interrogatories attached thereto. A copy of same is hereto attached, and made a part of this affidavit. That said notice provided for the taking of said deposition on the 8th day of June, 1895. That said deposition has not as yet arrived, and that affiant cannot state positively whether said deposition has been taken, but affiant has expected the same to arrive in time for this trial; but whether it has been taken or will arrive in time for trial at this term affiant cannot state. The last information had from the officer designated to take said deposition was that the witness, Harness, had not then been found by said officer, so that his deposition could not be taken, but affiant says that if this cause is continued to the next term of this court affiant verily believes that he can have the deposition of said Harness, or have him present in person as a witness. That affiant also secured a subpœna for said Harness, to be placed in the hands of the sheriff of Beaverhead county for service if said Harness should return or be found in this county, and the same has been returned 'Not found.' That this affidavit is not made for delay merely, but is made in good faith, that affiant may have a fair trial, and that justice may be done.''

The defendant's affidavit is supported and corroborated in every particular as to the diligence used to ascertain the whereabouts of the absent witness and to secure his testimony by the affidavits of defendant's brother and his attorneys. The affidavit of the defendant discloses the name and absence of the witness; the materialty of his testimony; his inability to prove the same facts by any other witness; the expectation of the defendant's ability to secure the presence or testimony of the

absent witness at the next term of the court; the facts in detail that he can prove by the testimony of the absent witness, as well as the exercise of the utmost diligence to secure his attendance or testimony. The corroborating affidavits of the defendant's brother and attorneys show, it seems to us, that every reasonable effort had been made to locate the absent witness and secure his testimony in time for the trial. It appears that they located the witness on or about the 25th day of May, at or near Horton, Kan., that they immediately sent out a commission to take his testimony, gave notice to the county attorney of the time and place, to wit, Horton, Kan., on the 8th day of June, accompanying the notice with the proper interrogatories; that the case was called for trial on the 12th of June; that on that day a letter was received from the person commissioned to take the deposition stating that the witness had not been found. The county attorney refused to admit that the absent witness, if present, or if his deposition could be taken, would testify to the facts stated in defendant's affidavit for a continuance, or consent that the affidavit might be read to the jury as the evidence of the absent witness. After such refusal of the county attorney to permit the affidavit of the defendant to be read to the jury the court overruled the application for a continuance. We are at a loss to determine what more perfectly meritorious or sufficient showing for a continuance could have been made than is here presented. The defendant was entitled to have a reasonable time and opportunity to secure the attendance of his witnesses or their testimony. That he was remarkably diligent in his efforts to do so is amply shown. We think the showing he made entitled him under the law to a continuance, and that the order of the court denying his application therefor was error. (*State* v. *Lund*, (Kan.) 31 Pac. 146; *Territory* v. *Davis.* (Ariz.) 10 Pac., 359; Code Civ. Proc., 1887, § 253.)

The counsel for defendant assign as error the action of the court in refusing to require the prosecution to produce and place upon the witness stand on the trial of the case the only two eyewitnesses to the homicide. One of these witnesses

was Alden Harness, the witness on account of whose absence defendant applied for a continuance.   The other was a person who is, with a familiarity impolite, if not vulgar, called "Whisky Jack."   It was impossible, from defendant's own showing, for the state to have produced Harness.   He was out of the state.   The only reason appearing for not placing "Whisky Jack" on the stand was shown in the affidavit of the county attorney that he had investigated the matter, and from the best information he could obtain was able to state on information and belief that Jack was stupidly drunk at the time of the killing.   It appears that Jack was sitting on a little porch near, but outside of, the door of the saloon in which the homicide occurred.   He did not see what occurred inside the saloon, but was located so he could hear what was said at the time of the shooting.   The state resorted to circumstantial evidence to establish its case.   We think the proper rule in such cases is stated in *Wellar* v. *People,* 30 Mich. 16. In this case the court says :   "In cases of homicide, and in others where analogous reasons exist, those witnesses who were present at the transaction, or who can give direct evidence on any material branch of it, should always be called, unless possibly, where too numerous."   (*Hurd* v. *People,* 25 Mich. 405; *Scott* v. *State,* 19 Tex. App. 325; 1 Greenleaf on Evidence (15th Ed.) § 82; *Territory* v. *Hanna,* 5 Mont. 248; *State* v. *Russell,* 13 Mont. 164, is not in conflict with *Territory* v. *Hanna,* on this question.)   We think, under the circumstances, the witness, Jack, should have been put upon the stand by the state, and the belief of the prosecuting attorney that he was stupidly drunk at the time of the homicide was not a sufficient reason for not introducing him as a witness. Had he been placed upon the stand it could have been determined by his examination whether he was too drunk to hear or see anything material to the case.   He was not even subpoenaed as a witness in the case.   We think, under the great weight of authority, that resort should not be had to circumstantial evidence in such cases when it appears that direct proof can be reasonably had.   The best evidence of which the case admits should always be introduced.

The defendant, at the trial, requested the following instruction : " *The jury are instructed that the fact that Metcalf is the defendant is not of itself sufficient to impeach or discredit his testimony or evidence.* The law makes him a competent witness in the case; and his evidence, like all other evidence in the case, should be considered by the jury; but in weighing his evidence the jury may take into consideration the fact that he is the defendant." The court modified the instruction by striking out the words in italics. We think the instruction as requested should have been given.

The other assignments of error as to the instructions complained of by the defendant we think are not well taken. If there was error in these respects, it was error in favor of the defendant. Certainly he was not prejudiced thereby, and cannot complain. For the reasons given above, the judgment and order appealed from are reversed, and the cause remanded for new trial.

*Reversed.*

De Witt, J., concurs.

Hunt, J., absent.