STATE, RESPONDENT, v. NIELSON, APPELLANT.

(No. 2,615.)

(Submitted February 19, 1909.   Decided March 6, 1909.)

[100 Pac. 229.]

Criminal Law — Homicide—Information—Sufficiency—Instructions—Limiting Evidence to Certain Purposes—Commenting on Weight of Evidence.

Homicide—Information—Deliberation and Premeditation—Surplusage.

1.  The elements of premeditation and deliberation are matters of proof, from which the jury may draw their own inference in fixing the degree of the murder charged against defendant, and need not be alleged in the information; hence, an objection to such a pleading that, in alleging that accused willfully, etc., and of his "deliberately premeditated" malice aforethought killed another, the terms "deliberately" and "premeditated" characterized the malice and not the killing, and were, therefore, abortive as elements of the definition of murder in the first degree, was without substance. The words quoted were surplusage.

Same—Information—Sufficiency—Murder in Second Degree—Manslaughter.

2.  Where defendant was convicted of manslaughter under an information which charged all the elements of murder in the second degree, he will not be heard to complain that the pleading was insufficient to charge murder in the first degree.

Same—Information—Means of Killing.

3.  In charging murder it is not necessary that the means by which the killing was done should be alleged.

Same—Defenses—Instructions—Limiting Evidence to Certain Purposes.

4.  Where the defendant, in a prosecution for homicide, relied solely upon the defense that the killing was excusable, because accidental, and done while accused was attempting to disarm deceased, who, while hunting, was trespassing on lands in defendant's charge, an instruction which, in restricting evidence of trespasses to the purposes of aiding the jury in determining why defendant was armed at the time and whether the killing was accidental, practically withdrew from the jury's consideration evidence showing justification or palliation, was not prejudicial to defendant. The court did not err in not recognizing a defense upon which accused himself did not rely.

Same—Instructions—Commenting on Weight of Evidence.
 5. Nor was the instruction, referred to in the foregoing paragraph, objectionable as commenting upon the weight of the evidence, where, in restricting the evidence to the purposes indicated, it became necessary to refer to it, but, in doing so, the court did not express any opinion as to the weight which the jury should give to it.

*Appeal from District Court, Silver Bow County; Geo. M. Bourquin, Judge.*

SOFUS NIELSON was convicted of manslaughter, and from the judgment, and an order denying a new trial, he appeals. Affirmed.

*Messrs. Breen & Hogevoll,* for Appellant.

The information is defective in that it fails to set forth the means whereby the offense was committed. (*State* v. *Keerl,* 29 Mont. 510, 101 Am. St. Rep. 579, 75 Pac. 362; *State* v. *Sundheimer,* 93 Mo. 311, 6 S. W. 52; *Territory* v. *Poulier,* 8 Mont. 147, 19 Pac. 594; 4 Current Law, p. 7; *State* v. *Fontenot,* 112 La. 628, 36 South. 630; *Miller* v. *United States,* 133 Fed. 337, 66 C. C. A. 399; *United States* v. *Post,* 113 Fed. 852; *United States* v. *Hess,* 124 U. S. 483, 8 Sup. Ct. 571, 31 L. Ed. 516; *People* v. *Aro,* 6 Cal. 208, 65 Am. Dec. 503; *People* v. *Wallace,* 9 Cal. 31; *People* v. *Lloyd,* 9 Cal. 55; *People* v. *Dolan,* 9 Cal. 576.) Not every offense defined by statute is sufficiently described in the information by following the language of the statute (*People* v. *Schmitz* (Cal.), 94 Pac. 419) ; therefore the old idea of simply following the language of the statute is no longer law in all cases. (*State* v. *Shenton,* 22 Minn. 311.) In reference to the requirements of a common-law indictment, we desire to call the court's attention to Hammond's 4th Blackstone, 393, 394, with relation to this subject. (See, also, 1 McLean on Criminal Law, p. 370, and Wharton's Criminal Pleading and Practice, secs. 166, 258.)

If the person to be arrested is armed with a deadly weapon, the officer is justified, even to the extent of killing, to make the arrest. (21 Cyc. 798, citing, *Lindle* v. *Commonwealth,* 23 Ky. Law Rep. 1307, 64 S. W. 986.)

Instruction No. 23 commented on the evidence and invaded the province of the jury. (*State* v. *Schnepel,* 23 Mont. 523, 59 Pac. 927; *State* v. *Mahoney,* 24 Mont. 281, 61 Pac. 647; *State* v. *Jones,* 32 Mont. 442, 80 Pac. 1095; *Macon Railway etc. Co.* v. *Vining,* 123 Ga. 770, 51 S. E. 719; *Smith* v. *Hazlehurst,* 122 Ga. 786, 50 S. E. 918.)

*Mr. Albert J. Galen,* Attorney General, and *Mr. Wm. L. Murphy,* Assistant Attorney General, for Respondent.

An indictment good at common law is sufficient as an information under the statute. (*State* v. *Lu Sing,* 34 Mont. 31, 85 Pac. 521; *State* v. *McGowan,* 36 Mont. 422, 93 Pac. 552; 1 Archibald's Criminal Practice and Pleading, 881.) A pleading in the language of the statute, in terms as broad as the statute, is sufficient. (21 Cyc. 834.) It is not necessary to allege the particular means or manner by which death was accomplished, for an "unlawful, felonious, premeditated  *  *  *  killing, with malice, etc.," is a murder, by whatever means it was accomplished. (Revised Codes, sec. 9156.) This information is sustained by the following authorities: *State* v. *McGowan,* 36 Mont. 422, 93 Pac. 552; *State* v. *Hliboka,* 31 Mont. 455, 78 Pac. 965; *People* v. *Hyndman,* 99 Cal. 3, 33 Pac. 782; *People* v. *Suesser,* 142 Cal. 354, 75 Pac. 1093; *People* v. *Ung Ting Bow,* 142 Cal. 341, 75 Pac. 899; *People* v. *Lee Look,* 137 Cal. 590, 70 Pac. 660.

MR. CHIEF JUSTICE BRANTLY delivered the opinion of the court.

The information in this case charged the defendant and one William Warnecke with murder. Defendant, having been granted a separate trial, was convicted of manslaughter, and has appealed from the judgment and the order denying him a new trial.

The body of the information is as follows: "William Warnecke and Sofus Nielson are accused by James E. Murray, the duly elected, qualified and acting county attorney in and for

the county of Silver Bow, state of Montana, by this informa-
tion, in the name and on behalf and by authority of the state of
Montana, of the crime of murder, committed by them, the said
defendants, William Warnecke and Sofus Nielson, as follows,
to-wit: That at the county of Silver Bow, state of Montana, on
or about the twenty-ninth day of September, A. D. 1907, and
before the filing of this information, the said defendants, Will-
iam Warnecke and Sofus Nielson, did willfully and unlawfully
and feloniously, and of their deliberately premeditated malice
aforethought, kill and murder one Chris. Stanisich, then and
there being a human being. 'Contrary to the form,'' etc. While
many assignments of error are made by counsel, only two are
discussed in the brief. We shall therefore notice these only.

It is said that the terms ''deliberately'' and ''premeditated''
characterize the malice, and not the killing, and are therefore
abortive as elements of the definition of murder in the first de-
gree as laid down in the statute. The objection is without sub-
stance. ''Murder is the unlawful killing of a human being with
malice aforethought.'' (Revised Codes, sec. 8290.) It is
charged that the killing was with malice aforethought, and how-
ever else the condition of mind indicated by this expression is
regarded as modified by the addition of the words referred to,
the scope and meaning of the expression is not in any way re-
stricted. It was pointed out by Mr. Chief Justice Wade, in the
early case of *Territory* v. *Stears*, 2 Mont. 324, that an indict-
ment was sufficient at common law which charged that the kill-
ing was done feloniously, willfully, and with malice aforethought,
and that the elements of premeditation and deliberation were
matters of proof, from which the jury should draw their own
inference in fixing the degree. This form of indictment or in-
formation has been considered by this court since in several
cases, and has always been held sufficient. (*Territory* v. *Mc-
Andrews*, 3 Mont. 158; *State* v. *Metcalf*, 17 Mont. 417, 43 Pac.
182; *State* v. *Hliboka*, 31 Mont. 455, 78 Pac. 965; *State* v. *Lu
Sing*, 34 Mont. 31, 85 Pac. 521; *State* v. *Hayes, ante*, p. 219,
99 Pac. 434.) It is difficult, if not impossible, to distinguish
between the expressions ''deliberate and premeditated killing

with malice aforethought" and "killing with deliberate and premeditated malice aforethought." (*State* v. *Metcalf, supra.*) For, so far as the elements of premeditation and deliberation enter into the state of mind accompanying the act of killing, the one expression imports them as much as does the other. As we have seen, these elements are matters of inference from the evidence, and it is not necessary to charge them. But were it necessary to charge them in order to sustain a conviction of murder in the first degree, the information here charges all the elements of murder in the second degree, and, since the defendant was convicted of manslaughter, a crime included therein, he cannot complain that he was not charged with murder in the first degree. If the information had simply charged manslaughter, it would have been sufficient to sustain the conviction. (*Williams* v. *State*, 35 Ohio St. 175.)

The further objection is made that the information is insufficient in that it does not charge the means by which the killing was done. This point was decided adversely to the appellant in the case of *State* v. *Hayes, supra,* and is too well settled in this jurisdiction to require discussion. (*State* v. *McGowan*, 36 Mont. 422, 93 Pac. 552; see, also, *People* v. *Hyndman*, 99 Cal. 1, 33 Pac. 782; *People* v. *Lee Look*, 137 Cal. 590, 70 Pac. 660; *People* v. *Ung Ting Bow*, 142 Cal. 341, 75 Pac. 899; *People* v. *Suesser*, 142 Cal. 354, 75 Pac. 1093.)

It is plausibly contended that the court erred in submitting the following instruction: "23. You must not be misled by evidence of aggravated trespasses about the ice pond, nor mistake the purpose of such evidence. None, nor all of said trespasses, nor injury or damage caused thereby, nor aggravation or annoyance due to them, nor anger or resentment justly aroused by them, justifies or excuses the killing of Chris. Stanisich by defendant. And, too, note that Chris. Stanisich was guilty of none of such trespasses, save the trifling one of shooting ducks the day he was killed. There are certain trespasses against occupied dwelling-houses, and certain felonies that may be resisted and prevented at the time, to the extent of taking life, but not as punishment, after the trespasses are completed. But where, as

in the case of Chris. Stanisich, the trespass is on land and of a being inconsiderable, it cannot be resisted or prevented by taking life, nor by assault with, or use of, a dangerous weapon; for life and limb are sacred and especially within the protection of the law, and not to be taken or seriously injured or menaced, save for great and compelling offenses, The law affords ample redress for trespasses on a man's land, or against his property, of the character here testified to, but does not sanction taking life to prevent or punish them. So in this case the evidence of trespasses was admitted, not that it established a defense for killing deceased, but that you may consider it to aid you, so far as it can, in determining the object and intent of defendant in being armed at the place where deceased was killed, and in determining whether the killing was unlawful or accidental. And if the killing was because of such trespasses and feeling aroused thereby, or because deceased was trespassing when killed, and not accidental, as defendant claims, it is murder, and you should so find by your verdict."

In order to understand the purport of this assignment, it will be necessary to make a brief statement of the facts leading up to the homicide. The Butte Ice Company owns an icehouse, with ice ponds, situate about three miles south of the city of Butte, in Silver Bow county. William Warnecke and the defendant were employed by the company to harvest and store ice during the winter, and get it out for distribution during the summer. Warnecke had charge as foreman or superintendent, and his wife kept the boarding-house for the men employed. For some time prior to the morning on which the homicide occurred, there had been a good deal of reckless and careless shooting about the ponds and buildings by persons going out from the city to hunt ducks and other small game sometimes found about the ponds and in the adjoining fields. In some instances shot and bullets entered the boarding-house and the other buildings. In one or two instances some of these trespassers had shot at members of Warnecke's family. A horse of his had been killed by a bullet which had entered the stable. These reckless acts had caused so much anxiety to Warnecke's

family and the employees about the ice ponds that he finally sought and procured from the sheriff an appointment as deputy, in order that he might arrest and disarm the offending parties. In the meantime the term of office of the sheriff making the appointment had expired. The appointment had not been renewed. Though on the morning of the homicide Warnecke supposed he was acting as deputy sheriff, such was in fact not the case. Notices had been posted about the premises forbidding hunting and shooting. On this morning the deceased, with three other men, went out to the ponds to shoot ducks. There is some uncertainty as to whether all had guns, and whether the deceased had gone there with more than one companion. In any event, three were armed, and the four were apparently together. There is a conflict in the evidence as to whether Warnecke warned these men off the premises, prior to the homicide, or not. It is certain that he went out from his house two or three times during the morning to warn off persons who were engaged in shooting, and that when he went out with the defendant and two others upon a repetition of the shooting, he found the deceased and the others there. He, with his companions, undertook to arrest them. The defendant had a Winchester rifle. Warnecke had a revolver. The state's witnesses testified that the other two in company with them were armed with guns, though this was denied by the defendant and his companions. The state's witnesses testified that the defendant had already disarmed one of the parties; that he then approached the deceased, and demanded that he surrender his gun and submit to arrest; that the deceased, not being able to understand English, or not being willing to give up his gun, refused, and that thereupon, while he stood holding his gun with both hands, the defendant shot him in the face, killing him instantly. The defendant testified that when demand was made upon the deceased for his gun, and he (defendant) approached him to take it, the deceased raised his gun and thrust it in defendant's face; that defendant, being encumbered with the two guns, raised his own to strike aside that of the deceased, and that in doing this it was accidentally discharged, killing

deceased. In this statement he was corroborated by his companions in so far as they could speak from appearances. No other shot was fired. It seems to have been the custom of War-necke, in case he found trespassers upon the premises, to arrest and disarm them, and then release them, leaving the guns at the city office of the company whence they could be reclaimed afterward by the owners. The defendant at the trial undertook to show that the homicide was accidental, and therefore excusable. It was not claimed or suggested by him or his witnesses that he shot in self-defense, or that the shooting was done in the heat of passion provoked by any wrongful act of the deceased or any of his companions. There was no evidence tending to show that deceased or his companions were ever upon the premises before. The evidence tended rather to show the contrary.

Counsel make the point that the instruction prejudiced the defendant by withdrawing from the jury consideration of any personal trespass upon him by the deceased, which the evidence tended to establish. Inasmuch as the defendant relied exclusively upon the defense that the homicide was excusable, because accidental, the restriction made by the court of the purpose for which the evidence was admitted could not have prejudiced the defendant as alleged. It is true, consideration of the evidence for the purpose of justification or palliation is eliminated entirely. Yet defendant cannot claim prejudice because the court did not recognize a defense upon which he himself did not rely, and instruct the jury with reference to it.

The same may be said of the contention that the instruction is erroneous in that it comments upon the weight of the evidence. Whether it lays down the law correctly as to the extent to which one may go in resisting a trespass upon his property it is not necessary to consider or decide. But it was entirely proper for the court to define the purpose for which the evidence had been offered and admitted, and to limit it directly to this purpose. In doing this it became necessary to refer to it; but there is nowhere expressed, even by implication, an opinion as to the weight which the jury should give to it.

We find no prejudicial error in the record.   The judgment and order are affirmed.

*Affirmed.*

MR. JUSTICE SMITH and MR. JUSTICE HOLLOWAY concur.

