STATE, RESPONDENT, *v.* POWERS, APPELLANT.

(No. 2,689.)

(Submitted June 10, 1909.   Decided June 16, 1909.)

[102 Pac. 583.]

*Criminal Law—Homicide—Jury—Challenge to Panel—Self-defense—Instructions—Information—Date of Death—Surplusage—Variance.*

Criminal Law—Drawing Jurors—Challenge to Panel.
    1.  The fact that two judges of a district court, divided into departments, sat together when an order for the drawing of jurors for their departments was made, is not ground for challenge to the panel.

Same—Judicial Authority—Delegation—Challenge to Panel—Presumptions.
    2.  The court in making the order above referred to appointed three members of the bar to supervise the drawing of jurors. The record on appeal did not disclose that during the drawing the attorneys thus appointed attempted to exercise any judicial functions. *Held,* that the court's action did not constitute a valid ground for challenge to the panel as a delegation of judicial power. The presumption obtains that the judges and clerk did their duty.

Same—Jurors—Names—Clerical Errors—Challenge to Panel.
    3.  Where "M. Meyer" responded to a summons to jury duty, and the original juror's slip bore his proper name and place of residence, the fact that the venire contained the name of "F. Meyer" and the sheriff's

return showed that "Ed. Meyer" had been served was not ground for challenge to the panel. The names of "F. Meyer" and "Ed. Meyer" *held* to have been clerical errors.

Same—Evidence—Degree of Proof—Moral Certainty—Statutes.
4.  The provision of section 7847, Revised Codes, that moral certainty, or that degree of proof which produces conviction in an unprejudiced mind, is all that is required, *held* applicable to criminal causes.

Homicide—Self-defense—Instructions—Burden of Proof.
5.  The court having instructed the jury that if it appeared to defendant, as a reasonable person, when he killed deceased, that it was necessary to do so in self-defense, he had a right to act on such appearances, although he was in no actual danger; that no greater burden rested on him than to raise a reasonable doubt concerning his guilt, and that if, after considering all the evidence, the jury were not satisfied beyond a reasonable doubt of his guilt, he should be acquitted,—the giving of the further instruction that defendant's cause of apprehension must have been reasonable and that it was for the jury to determine whether the facts constituting such reasonable cause of apprehension had been *established*, and, if not so established, defendant was not entitled to acquittal, could not have misled the jury into believing that the burden of proof was upon defendant to show that his apprehension was a reasonable one.   (MR. JUSTICE HOLLOWAY dissenting.)

Same—Self-defense—Instructions.
6.  Where the only testimony that deceased assaulted defendant was that of defendant himself, which was not only not corroborated, but facts and circumstances were made to appear from which the jury could properly have determined that his version was not true, the refusal of an instruction on self-defense which proceeded upon the theory that defendant was confronted by the actual fact that deceased was attempting to commit a felony or do some great bodily injury upon the person of accused, was properly refused.

Same—Unnecessary Instructions.
7.  Where, in a criminal action, the court had properly charged the jury on all branches of the case, refusal to instruct that each juror should render his verdict according to the law as given in the instructions, and according to the evidence; that private knowledge or belief acquired otherwise must be disregarded; that the verdict should not be based on probabilities of defendant's guilt; and that, even though the evidence might establish in their minds a strong suspicion or a probability of defendant's guilt, he should not be convicted unless they were convinced of his guilt beyond a reasonable doubt, was proper.

Same.
8.  Error was not committed in refusing an instruction that the physical power and strength of the defendant and deceased should be considered by the jury in arriving at a verdict in a prosecution for homicide.   While properly a subject matter for argument to them, it was not one to be incorporated in the charge.

Same—Information—Date of Death—Surplusage—Variance.
9.  *Held*, that in an information charging murder it is not necessary to allege the date upon which deceased died, as distinguished from the date of assault; and that therefore the contention that there was a fatal variance between a pleading which charged that deceased was killed on a certain day and the evidence which showed that, while he was assaulted on that day, he died two days later, was without merit.

*Appeal from District Court, Silver Bow County; Michael Don-lan, Judge.*

MICHAEL J. POWERS was convicted of manslaughter, and appeals. Affirmed.

*Mr. James T. Fitzgerald,* and *Mr. B. S. Thresher,* for Appellant.

The record fails to disclose anything the court or clerk did in the drawing of the jury panel after the appointment of the commission. It does not even say that the drawing was conducted fairly or as provided by law. The record should state how the drawing was actually done. (*State* v. *Payne,* 6 Wash. 563, 34 Pac. 317.) A jury panel must be drawn in substantial conformity with the requirements of the statute, and the provisions of the code are in their essential particulars mandatory. (*State* v. *Landry,* 29 Mont. 218, 74 Pac. 418.) The persons designated by statute to draw the jury must do so, and if a person not authorized by law to act does participate, the jury so drawn is illegal. (*State* v. *Payne, supra;* 24 Cyc. 219, 229, 230.) M. Meyer, drawn as a juror, was nothing more than an intruder; and appellant's challenge should have been sustained. (*Goodwin* v. *State,* 102 Ala. 87, 15 South. 571.)

Superior physical strength of assailant, and ill-health of appellant, are circumstances of inequality of the two, and the jury should have been properly instructed as requested. (*Floyd* v. *State,* 36 Ga. 91, 91 Am. Dec. 760; *State* v. *Benham,* 23 Iowa, 161, 92 Am. Dec. 416; *State* v. *Crea,* 10 Idaho, 88, 76 Pac. 1016; McClain's Criminal Law, sec. 305.)

It was necessary that the information state the time and place, as well of the infliction of the wound, of the death of the party, in order to fix the venue, and that it may appear on the record that the deceased died within a year and a day after receiving the injury. (*People* v. *Wallace,* 9 Cal. 31.)

For a thorough discussion of the rule above stated, see *Ball* v. *United States,* 140 U. S. 118, 11 Sup. Ct. 761, 35 L. Ed. 377.

The allegation in the information that the appellant did then and there willfully, etc., kill and murder, was material and absolutely necessary; and that the evidence should substantiate such an allegation beyond a reasonable doubt is beyond question. The evidence shows that White was not instantly killed; nor does the evidence show where he died. (*State* v. *Cummings,* 5 La. Ann. 330.)

*Mr. Albert J. Galen,* Attorney General, and *Mr. W. L. Murphy,* Assistant Attorney General, for Respondent.

MR. JUSTICE SMITH delivered the opinion of the court.

The above-named defendant was charged with murder, and convicted of manslaughter, in the district court of Silver Bow county. He appeals from the judgment and an order denying a new trial.

1. The first error assigned by the defendant relates to the action of the court in overruling a challenge to the panel of jurors in attendance upon the court. This challenge was interposed after a trial jury had been accepted by both parties, and just after the court had ordered that the jurors so accepted should be sworn. The three grounds of the challenge will be considered in the order in which they were interposed.

(a) It appears from the record that the judges of departments Nos. 2 and 3 of the district court of Silver Bow county, sitting together, made the order for the drawing of jurors for the two departments. This cause was afterward tried in department No. 3. We do not regard the fact that the judge of department No. 2 sat with the judge of department No. 3 when the order was made, and that the order related to jurors for both departments of the court, as being of any importance. There is but one district court in Silver Bow county. The portion of the challenge relating to this feature was properly overruled by the court.

(b) At the time said order was made, the court appointed three members of the bar of Silver Bow county to supervise the drawing of jurors. Defendant's counsel now contend that this

action amounted to a delegation of judicial authority to these three members of the bar. We do not regard the point as well taken. Whatever local reason there may have been for the action of the judges in requesting these gentlemen to be present at the time the jurors were drawn, we do not know; but the record does not disclose that they attempted to exercise any judicial functions, and the presumption is that the judges and the clerk of the court did their duty.

(c) The third ground of the challenge to the panel was that one M. Meyer was on the panel, whereas in fact the venire for the jury contained the name of "F. Meyer," and the sheriff's return shows that "Ed. Meyer" was served. We do not regard this as any reason why the whole array or panel should be set aside by the court. The record shows that no challenge was interposed to M. Meyer as an individual juror; he was examined for cause and passed. The defendant failed to exhaust all of his peremptory challenges, and accepted the jury while M. Meyer was in the box. The examination of M. Meyer shows that he possessed the necessary qualifications to sit as a juror. The record also discloses that the original slip drawn from the jury-box bore his name; that he was personally served by the sheriff, and responded to the summons. The original juror's slip bore the inscription "Meyer, M., 211 W. Park," which was the proper name and residence of the juror in the box. The only reasonable conclusion is therefore that the names "F. Meyer" and "Ed. Meyer" were clerical errors, and nothing more.

2. The second ground of complaint is that the court instructed the jury that: "The law does not require demonstration; that is, such a degree of proof as, excluding possibility of error, produces absolute certainty, because such proof is rarely possible. Moral certainty is only required, or that degree of proof which produces conviction in an unprejudiced mind." We think this instruction was properly given. It is an exact copy of section 7847, Revised Codes, and is found under the title, "General Definitions of Evidence," and is properly ap-

plicable to criminal cases. This court, in the case of *Territory*
v. *McAndrews,* 3 Mont. 158, said: "Moral certainty is the very
highest grade of certainty that human testimony can produce."
(*State* v. *Martin,* 29 Mont. 273, 74 Pac. 725.)

3. Again it is contended that the court erred in giving in-
struction No. 17 to the jury. The instruction reads in part as
follows: "The court instructs the jury that the right to defend
one's self against danger, not of his own seeking, is a right
which the law not only concedes, but guarantees, to all men.
The defendant may therefore have killed deceased, and still be
innocent of any offense against the law. If, at the time he cut
deceased (if you find from the evidence, beyond a reasonable
doubt, that he did so), he had a reasonable cause to apprehend
on the part of the deceased a design to do him some great per-
sonal injury, and there was reasonable cause for him to appre-
hend immediate danger of such design being accomplished, and
to avert such apprehended danger, he cut or stabbed deceased,
and at the time he did so he had reasonable cause to believe
it necessary for him to use his knife in the way he did to pro-
tect himself from such apprehended danger, then, and in that
case, the cutting was not felonious, but was justifiable, and you
ought to acquit him on the ground of necessary self-defense.
It is not necessary to this defense that the danger should have
been actual or real, or that the danger should have been im-
pending and immediately about to fall. All that is necessary
is that the defendant had reasonable cause to believe, and did
believe, these facts. But, before you acquit on the ground of
self-defense, you ought to believe that defendant's cause of ap-
prehension was reasonable. Whether the facts constituting such
reasonable cause have been established by the evidence you are
to determine; and, unless the facts constituting such reasonable
cause have been established by the evidence in the cause, you
cannot acquit in such cause, on the ground of self-defense, even
though you may believe that defendant really thought he was
in danger.   *   *   *   "

The gist of the argument is that this instruction "placed the
burden of proof upon the appellant of establishing by evidence

the fact that appellant believed then and there that he was in danger such as justified him in justifiable homicide, whereas the law is that all appellant needs to do is to raise a reasonable doubt in the minds of the jury as to whether or not such was necessary.'' We do not consider the point as well taken. The court also instructed the jury: '' (63) The jury are instructed that if it appeared to the defendant, at the time he struck White, as a reasonable person, that it was necessary for him to do as he did in order to save his own life, or to prevent receiving great bodily injury, he had the right to act upon such appearances, and to do as he did although he was in no actual danger. (64) In this connection the jury are instructed that no greater burden rests upon the defendant than to introduce sufficient evidence to raise a reasonable doubt concerning his guilt. If, after a consideration of all of the evidence in the case, including that offered by the state, as well as that offered by the defendant, you are not satisfied beyond a reasonable doubt of the defendant's guilt, you should give him the benefit of the doubt and acquit him.'' And, also: ''In any case no greater burden rests on the defendant than to introduce evidence sufficient to raise a reasonable doubt.'' In view of these instructions, and others found in the record, we do not think the jury could have been misled by the phraseology of instruction 17, even though it would bear the construction placed upon it by his counsel, which we seriously doubt.

4. Instruction No. 21 is complained of for the reason, as it is contended, that the instruction tells the jury ''that manslaughter may be committed upon a sudden passion.'' A careful reading of the instruction convinces us that this construction may not reasonably be placed upon the instruction.

5. Again it is urged that it was error for the court to refuse to give appellant's requested instruction No. 73. The instruction reads as follows:

''In deciding what force may be necessary to use when resisting an attempt to commit a felony on one's person, or to

do some great bodily injury to one's person, the court instructs you, gentlemen of the jury, that a person may act upon the circumstances as they may appear to him at the time, and he is not to be held criminal because a calm survey of the facts afterward shows that the use of extreme means might by a possibility have been avoided.

"The right of self-defense is not limited or confined to those cases where the attack or assault is unexpected. When the attack is actually made, one has a right to repel it, no matter for how long a time he may have anticipated it. If you believe from all the evidence that Michael C. White attempted to commit a felony, or to do some great bodily injury upon the person of the accused, and the accused so believed at the time, it was not incumbent upon the defendant to retreat or fly for safety, but he was justified in standing his ground and defending himself, and killing his adversary."

The first paragraph of the instruction eliminates from the consideration of the jury the question of what a reasonable person would apprehend under all the circumstances. But it is contended that this defendant was confronted, not by appearances from which different men might draw different conclusions, but by actual facts and circumstances of which there could be no doubt under the testimony, to-wit, that deceased was attempting to commit a felony, or to do some great bodily injury upon the person of the accused. The defendant was the only witness who testified that White assaulted him. This testimony was not only not directly corroborated, but there were facts and circumstances from which the jury might have determined that it was not true. Under these conditions the court properly allowed the jury to decide how much, if any, of defendant's testimony they would believe.

6. The defendant requested instruction No. 74, as follows: "The court instructs you, gentlemen of the jury, that each individual juror must render his verdict according to the law as defined by the court in these instructions, and according to the evidence legally produced in this case. You must disre-

gard your own individual private knowledge or belief, acquired otherwise than from the evidence and the instructions of the court produced and given in this case. You are not to form or base your verdict upon probabilities of the guilt of the defendant. And even though the evidence in this case may establish in your minds a strong suspicion or a probability of the defendant's guilt, he should not be convicted unless you are convinced of his guilt beyond a reasonable doubt.'' If the jury is properly instructed on other branches of the case, there is never any necessity for giving this instruction. It contains a reflection on the intelligence of the jurors. However, the subject matter of the instruction was fully covered by other instructions given to the jury.

7. The defendant requested the court to instruct the jury that ''the physical power and strength of the defendant and the deceased are matters to be considered by you in arriving at your verdict.'' We think there was no necessity for giving this instruction. Jurors naturally take such matters into consideration, and the subject matter of the instruction might properly be argued to them. What has just been said applies also to requested instruction No. 76, which the court refused.

8. It is contended that there is a fatal variance between the allegations of the information and the proof. The information alleges that the deceased (White) was killed on the 14th of June, 1907, and the proof was that he was assaulted on June 14, and died on June 16, 1907. Murder was properly charged by the information. (See *State* v. *Hayes,* 38 Mont. 219, 99 Pac. 434; *State* v. *Nielson,* 38 Mont. 451, 100 Pac. 229.) We hold that it is not necessary, in Montana, to allege in an information for murder the date upon which the death occurred as distinguished from the date of assault. All that is necessary in order to constitute the crime of murder, the other requisite facts being proven, is that the death of the party occurred within a year and a day after the stroke received or the cause of death administered. (Revised Codes, sec. 8297.)

We find no error in the record, and the judgment of the district court of Silver Bow county and the order denying a new trial are affirmed.

*Affirmed.*

MR. CHIEF JUSTICE BRANTLY concurs.

MR. JUSTICE HOLLOWAY: I dissent. In my judgment, instruction No. 17 is erroneous, and, if given any consideration whatever by the jury, it must have been prejudicial to the defendant. That portion of the instruction which is particularly erroneous is as follows: "But before you acquit on the ground of self-defense, you ought to believe that defendant's cause of apprehension was reasonable. Whether the facts constituting such reasonable cause have been established by the evidence you are to determine; and, unless the facts constituting such reasonable cause have been established by the evidence in the cause, you cannot acquit in such cause, on the ground of self-defense, even though you may believe that defendant really thought he was in danger." Since it was not incumbent upon the state to establish the facts showing that defendant's apprehension was a reasonable one, the jury must have understood that the burden of proving those facts rested upon the defendant. In my judgment, by the use of the term *establish,* as employed here by the court, the jury could not have understood that the only burden cast upon the defendant was to introduce evidence sufficient only to raise a reasonable doubt of his guilt. There is not any substantial difference, in principle, between this instruction and instruction No. 30, given in *State* v. *Crowe, ante,* p. 174, 102 Pac. 579, and held to be prejudicially erroneous. The word "establish" means: "To make stable or firm; to fix immovably, or firmly; to settle; to confirm." (Webster's International Dictionary.)

The record discloses that seventy-one instructions were given in this case. Ten instructions, each plainly stating a rule of law applicable to the facts, would have been of some service to the jury; but the mass of instructions submitted could not

have had any other effect than utterly to confuse the jury, if any attempt was made to search for the meaning of the court.

Rehearing denied October 6, 1909.